LEWIS C. PROCTOR, RESPONDENT, v. JACOB RUPPERT, A CORPORATION, APPELLANT.—159 S. W. (2d) 328.

Kansas City Court of Appeals. January 26, 1942.

*Thompson & Osborne* and *William R. Barnes* for respondent.

*Louis R. Weiss* and *Mosman, Rogers & Bell* for appellant.

BOYER, C.—This action arose out of an automobile collision between a car operated by plaintiff and a car driven by one James Ball in the business of the corporate defendant. Ball was joined as a codefendant, but plaintiff dismissed the case as to him.

The substance of the negligence charge is that the defendants negligently caused, allowed or permitted their said automobile to be stopped on the main traveled portion of the highway with its right-hand side not as near the right-hand side of the highway as practicable, and thereby negligently created a dangerous obstruction to traffic on said highway, and particularly to the automobile plaintiff was operating.

The separate answer of the corporate defendant, in addition to a general denial, states that plaintiff's injuries if any, were due to and caused by his own carelessness and negligence contributing thereto, in that plaintiff operated his automobile at a high, dangerous, reckless and unlawful rate of speed upon the highway at the time and place in question, failed to keep a sufficient lookout for automobiles upon the highway, and that he so carelessly and negligently operated, managed and controlled his automobile as to cause same to collide with the automobile of James Ball; and that the plaintiff saw, or in the exercise of the highest degree of care on his part, could have seen said automobile in time, with the appliances at hand and with safety to himself, to have stopped said automobile, checked the speed thereof, or turned the same aside and thus averted the collision, all of which plaintiff carelessly and negligently failed to do.

There is evidence that on March 7, 1939, James Ball accompanied by one Grovier, who made occasional trips with him, left Kansas City in a four-door Buick sedan on their way to Des Moines, Iowa. Ball

was making the trip in connection with the business of his employer, the corporate defendant. The route of the journey was over U. S. Highway No. 69. When Ball reached a point on said highway approximately five miles southwest of Bethany, he either stopped or slowed down his car and got out of the automobile in order to extinguish a fire in his clothing which had been occasioned by a lighted cigarette. He directed his companion to take charge of the wheel and intended to pass around the car to the right side and enter it again.

In the meantime, plaintiff was approaching the Buick car from the rear driving an Oldsmobile sedan. He saw the Buick car when he was 400 to 450 feet from it and was traveling at a speed of 60 to 65 miles an hour. According to his testimony he could not see the entire car until he was within 375 to 400 feet away, and at that time he did not know that it was stopped on the highway. When he was about 200 to 250 feet in the rear of the Buick, he observed that the Buick car was stationary. He then turned to the left in order to pass, and when upon the west side of the highway he observed a car approaching from the opposite direction approximately the same distance that he was from the Buick. Plaintiff then turned his car back to the right and applied the brakes with full force. At this time, according to his evidence, he was 100 to 125 feet away from the Buick. He had seen a man standing on the right-hand side of the car. On account of his presence in that position and observing that the approaching car from the opposite direction was either slowed down or stopped, plaintiff again turned his car to the left in an effort to pass the Buick. The front end of his car passed by, but the rear end skidded or sideswiped the Buick car. Plaintiff's car continued on across the highway and stopped on the west shoulder a short distance in front of the Buick. Plaintiff's evidence shows that the Buick car was stationary in the highway with the left side approximately near the center line. Ball and his companion testified that the car had not completely stopped but merely slowed down and was only slightly rolling while they were changing seats.

The accident occurred about 2 P. M. on a bright day. The highway was of paved concrete eighteen feet wide; the shoulder on the east side was eight feet wide and on the west side, seven feet wide. As a result of the collision plaintiff was thrown against the wheel, the dash, and the top of the car and injured.

The case was submitted upon instructions for both parties corresponding to the issues raised by the pleadings and the evidence. Plaintiff was awarded a verdict and judgment for $3000. Defendant duly appealed, and seeks here an outright reversal on the grounds that the undisputed evidence shows that the alleged negligence of defendant was not the proximate cause of the casualty, and that

plaintiff's evidence convicts him of contributory negligence as a matter of law. The assignments of error include the action of the court in refusing defendant's demurrer to the evidence; the alleged erroneous admission of evidence; the refusal of the court to declare a mistrial and discharge the jury on account of alleged prejudicial remarks of counsel and the court; and finally, that the verdict is grossly excessive.

It is first strongly urged that the demurrer should have been sustained because the undisputed evidence showed conclusively that the alleged negligence of the defendant was not the proximate cause of the injury, and because under the evidence plaintiff was guilty of contributory negligence as a matter of law. These two subjects are listed separately in the assignments and under points and authorities. The court is requested to consider the argument as applying to both. The principal relevancy of the argument is in support of appellant's insistence that plaintiff was contributorily negligent as a matter of law. To test the ruling on the demurrer a more detailed statement of the evidence will be presented.

In addition to the evidence above set out, a civil engineer testified in behalf of plaintiff that he had made observations and measurements and calculations on Highway 69 at and about the place of the accident. There was a church building located adjacent to the highway and the accident was shown to have occurred very nearly opposite the church. From the testimony of the engineer as well as that of other witnesses, it appears that the highway is laid in a north and south direction and is practically level for a distance of approximately 800 feet from what is called a hill that is 471 feet south of the church to another hill 300 feet north of the church. The points designated as hills indicate the top of an ascending incline of the highway both from the south and the north. There is a curve in the highway in approaching the incline south of the church. This curve ends forty-seven feet south of the top of the incline. This witness testified that from the top of the incline south of the church, and for a short distance south of that, he could see a point 300 feet north of the church.

Mr. Fred Williams was operating the automobile that approached from the north and was called as a witness by plaintiff. He testified to estimates of distances and speed, and stated that he was 300 to 400 feet north of the Buick car when he first saw it; that the Buick was standing one foot east of the center line; that a man was standing in front of the right fender; that when he was 200 to 300 feet from the Buick he saw the Oldsmobile turn out; that he was going at the rate of forty miles an hour and the Oldsmobile was then 150 or 200 feet south of the Buick and traveling at a rate of fifty or sixty miles an hour, in his judgment; that the Oldsmobile turned back behind the Buick and then turned out a second time. "When it came out the

front and came out all right past the car but it looked like the back. kind of sideswiped—skidded over and hit.'' The Oldsmobile crossed the road and came to a stop on the west side on the shoulder. Witness also brought his car to a stop on the west side of the highway and on the shoulder thereof, but had not stopped until after the collision occurred. When he saw the Oldsmobile start out and around the car he pulled off on the side. He gave it as his judgment that the Buick automobile was standing about 100 feet from the church; he observed tire marks of the Oldsmobile car on the pavement for a distance of 120 feet south of the Buick.

Ora Cassidy, a resident of Bethany, testified that he saw plaintiff, took him to a doctor, and later he and plaintiff went out to the scene of the accident to change a tire on the Oldsmobile and drove it into town; that the Oldsmobile was standing on the shoulder west of the highway near the church.

Plaintiff testified that he was thirty-seven years of age and resided in Kansas City; that he was a salesman for used cars and on the day in question left Kansas City to deliver the Oldsmobile sedan in Fort Madison, Iowa; that while traveling on Highway No. 69, he was 400 to 450 feet from the Buick when he first saw the top of the car; that he could see the entire car when he was 375 to 400 feet from it; that he was then traveling at a rate of sixty to sixty-five miles an hour; that the highway was practically level from the top of the hill; that there were no stop lights on the Buick and no warning signs; he did not know that it was stopped and continued in his course of travel; when he was 200 to 250 feet from the Buick he first knew it was standing on the highway; he then turned to the left to pass it; he looked north before turning; he turned his car to the west side and got over on the left side to pass and then saw the approaching car from the north a little farther away from the Buick than he was; he then turned back on the right-hand side, in his judgment, to avoid a head-on collision; when he turned back he took his foot off the gas and straightened the car up and then attempted to stop with the full application of all braking facilities; he did not apply his brakes with full force while turning back to the rear of the Buick on account of the danger of turning over if he did so; he was then 100 to 125 feet from the Buick car; when he first turned to the left in order to pass the Buick, he saw a man standing on the shoulder of the highway near the front of the Buick car; the thought occurred to him to try to pass on the right side of the Buick; he observed that the car approaching from the north had slowed down or stopped, and he then turned to the left endeavoring to miss the Buick car when a distance of 8 or 10 feet from it; the front end of his car missed the Buick, but the right rear portion slid sidewise into it; his car continued across the road onto the west shoulder; he was thrown around the wheel into the dash and top of the car and

injured. He stated that he did not know where he was when his car stopped or how he got out of it.

On cross-examination, he stated that the Oldsmobile was equipped with four-wheel hydraulic brakes in good condition and with nonskid cord tires; that the car was in good mechanical condition; it was broad daylight and the sun was shining; he did not slow down when he first saw the Buick car; he might have eased up on the gas a little; he did not think the approaching car had come in sight when he turned out at a point 200 or 250 feet from the Buick; when he got over on the west side he saw the car coming. He was asked why he got completely over on the left side and said: "At sixty miles an hour you would get over on the west side before you turned back; yes, sir." After turning out he continued about fifty feet and turned back to the right; he slowed down some by taking his foot off the gas, but had not put on the brakes and did not apply them full force until he got straight behind the Buick 100 or 125 feet; at that time he though to pass on the right in case he could not stop, of which he had doubts of being able to do; when behind the Buick he could see the Williams car maybe 150 feet north, apparently stopped; when he was 375 feet behind the Buick he did not see the Williams automobile for at that moment his attention was focused on the standing car and he did not see the Williams car until he turned out to the left. He further testified that he could not stop in 150 feet when going at a rate of sixty or sixty-five miles an hour; after the collision his car ran twelve or fifteen feet across the highway and from 115 to 140 feet after full application of the brakes. On re-direct examination he testified that the collision occurred approxicately 150 to 200 feet south of the church.

On behalf of defendant a construction engineer for the State Highway Department testified in reference to the plans and specifications for the construction of U. S. Highway No. 69; that it was a Federal aid highway and required to have sight distances of 500 feet. He gave the grades of the highway for some distance approaching the church from the south and northwardly therefrom. Proceeding northwardly in the direction of the church the highway ascends a grade of 4.8% to a point 475 feet south of the church; from that point northwardly there is a very slight upward grade to a point fifty feet south of the church, it being at a grade of .47%; the high point in the highway is 50 feet south of the church; it then slopes northwardly at a very slight descending grade; at a point 600 feet south of the church eyes five feet above the pavement could see the pavement at the church.

James Ball, in charge of the Buick car, testified that he was thirty years of age; a sales promoter for the defendant corporation, and left Kansas City in the Buick car which was a four-door sedan with his companion, Grovier; that they picked up a woman hitchhiker

at North Kansas City who was in the car with them at the time of the accident; that he and Grovier occupied the front seat and preceding the accident had been counting automobile numbers for amusement, and were engaged in a guessing contest for a wager similar to "auto poker." Grovier made a lucky guess and with a jubilant gesture threw up his arm and in so doing knocked a lighted cigarette out of his hand which fell upon Ball's clothing. He slowed down the car and told Grovier that he would have to take over; he got out on the left side of the car; no one was in sight from the rear; they were then directly opposite the church; the Buick car was still rolling; Grovier slid over under the wheel and as the car dropped past, Ball went around the back to get in on the right side; the car was barely moving; he got up to the door and started to open it when he heard a car coming from the south which was not yet in sight; when he saw it he stepped back on the shoulder of the highway and waved his arm at the oncoming automobile when it was 400 feet south of the Buick. Ball claimed that his car never did completely stop on the highway before it was hit, and that after the collision he went over to Proctor's car from which he was emerging and Proctor said to him: "Who was driving the car and who was that that waved at me?" Ball told him that it was he, and Proctor said: "How could you be doing both of them?" Mr. Ball then explained to plaintiff what had occurred.

Mr. Grovier testified that he was a broker for the corporate defendant and made trips with Mr. Ball about every week. He corroborated Mr. Ball as to what they were doing prior to the accident. He quoted Mr. Ball as saying: "You knocked my cigarette out of my hand. I am going to stop the car and get out; you watch the wheel." And then describing what was done, he said: "He stopped—put the brakes on until the car slowed down sufficient for him to get out. He got out as quick as he could. I reached over and grabbed the wheel with one hand until he got out; then I scooted under it." The balance of his testimony is that he sat there under the wheel; that the automobile was still moving; that Mr. Ball did not go around in front of the automobile and was not in front of it at any time; that he saw him when he got around on the right-hand side of the car; that Ball stepped away and as he turned around to see what was happening the impact came; that it was his best opinion that the Buick car was moving very slow at that time; he did not know that plaintiff's car was approaching and did not see it; neither did he notice the approaching car from the north until after the collision. He said: "It might have been coming but I wasn't paying no attention. He didn't drive up there and stop until after we were all out of the car." He also related the conversation between Mr. Ball and the plaintiff as recited by Mr. Ball.

The testimony of plaintiff in effect denied the conversation between

him and Ball, and statements made by him in reference to a man waving at him.

The foregoing is the substance of all of the evidence pertaining to the occurrences in question, the conduct of the parties, the character of the highway, the location of the cars, and various other surrounding facts and circumstances.

Under all of the evidence viewed in the light most favorable to the plaintiff, and with all favorable inferences in plaintiff's behalf, was there a submissible case established; or should plaintiff, under the evidence, be precluded from recovery on the theory that he was contributorily negligent as a matter of law?

After examination of many cases and other authorities cited by learned counsel upon both sides of the question, and particularly the ruling in the cases claimed to be most persuasive and controlling, and a consideration of the respective arguments for the application of approved legal principles to the evidence, the conclusion has been reached that reasonable minds may entertain different opinions upon the question of plaintiff's contributory negligence, and whether or not he exercised due care in view of all of the surrounding facts and circumstances. This question was therefore one for the jury. There is no contention that the evidence failed to establish negligence on the part of the defendant, or that plaintiff failed to make a submissible case for any reason other than that of his own negligence.

The substance of the argument on the question of proximate cause is that the standing Buick was a non-causal factor in the casualty; that its presence there was no more than a condition, sometimes called a remote cause, and that the efficient, producing, and proximate cause was the negligent conduct of plaintiff alone; that if the negligence of defendant be conceded, it was legally insulated by the intervening negligence of the plaintiff and reduced the negligence of defendant to the status of a remote cause. The entire argument, therefore, upon the questions of proximate cause and contributory negligence proceeds upon the premise that the uncontroverted facts in the case conclusively show negligence on the part of plaintiff as a matter of law, and that defendant is thereby absolved from liability.

Appellant insists that the plaintiff in approaching and attempting to pass the Buick car failed to meet the standard of conduct prescribed by the statute, Sec. 8385, R. S. Mo. 1939, and that the principles of law declared in adjudged cases and upon comparable facts require that appellant's contention that contributory negligence was shown as a matter of law in this case must be sustained. Special reliance is placed upon State ex rel. Kansas City Southern Ry. Co. v. Shain et al., 105 S. W. (2d) 915; Devine v. Barton et al. (Mo. App.), 22 S. W. (2d) 877; and Moore v. East St. Louis & Suburban Ry. Co. (Mo. App.), 54 S. W. (2d) 767, 770. Upon examination of these cases it is found that they are distinguishable upon the facts from

the case in hand and that the rulings are not applicable or controlling in the instant case.

In the case of State ex rel. v. Shain, the Supreme Court determined upon the facts in that case that plaintiff was contributorily negligent in driving his automobile against a railway car standing on a crossing. The particularly significant part of the case is the ruling that the testimony of plaintiff was incredible because contrary to physical laws and common knowledge. Plaintiff testified that he did not see the box car and could not see it until he was within a very few feet and so close that he could not stop his car. The court said that his testimony that he could not see was incredible, and if he could not see that he should have stopped until such time as he could see. In the case before this court for determination no such criticism could be made upon the testimony of plaintiff. Its credibility and weight were for the jury.

In the Devine case there is a discussion of the duty of the driver of an automobile approaching an ice wagon from the rear, but the question determined by the court was whether the evidence in the case was sufficient to raise a question of fact for the jury's determination as to the negligence of the approaching driver, and not whether the facts showed negligence on his part as a matter of law. The court ruled that the jury should decide the question of negligence on the part of the approaching driver. Clearly, this ruling does not support appellant's contention here.

In the Moore case the accident occurred in Illinois. Suit was first instituted and tried in the Illinois court. The case reached the appellate court of that State, and that court held that plaintiff was negligent. But it appears that under the practice of that jurisdiction, and upon motion of the defendant, the case was remanded. Just what further transpired in the Illinois court is not shown, but it may be assumed that the case was there dismissed and later filed in the Circuit Court of St. Louis. The disposition of the case when it reached the Court of Appeals was controlled by Illinois law. The court ruled that plaintiff's injury was due to his own negligence. Under facts and circumstances radically different than those in the instant case, and in view of the ruling of the Illinois court, the result was justified.

Many other cases are cited, including adjudications in other states, which are said to have persuasive force; none of them are found to have determinative weight. A review and an analysis of all of these cases would unduly and unnecessarily prolong the opinion.

The evidence relative to the questions, whether plaintiff failed to exercise the highest degree of care in the control and operation of his car, and failed to take timely measures to slacken speed, look ahead or turn aside as a prudent person would have done under the circumstances and thereby negligently contributed to the collision,

affords a basis for reasonable argument in support of opposite conclusions. This is a sufficient reason for the holding here made that reasonable minds may entertain entirely different opinions upon the issues of contributory negligence under the facts in this case. One may plausibly, and not unreasonably, contend that plaintiff was driving too fast, and should have slackened his speed immediately upon observing the Buick car so that he could control the movements of his car in view of any emergency or event that might occur while he was approaching; or that he could have seen the car approaching from the opposite direction before he did see it, and before he turned out on the west side of the highway to pass the Buick car, and that he should not have attempted to pass unless it appeared that he could pass in safety; or that he might have turned his car to the right instead of to the left to avoid a collision. Another might take the view, with equal or greater reason upon all the evidence most favorable to plaintiff, that plaintiff was in the exercise of due care; that he did all that a prudent and careful person might have been expected to do under the same evolving and complex circumstances; that when he first saw the Buick car, he did not know that it was stationary in the highway, and was not negligent in failing to reduce his speed immediately and while approaching what he thought was a moving vehicle; that he did not know that the Buick was stationary until he was within 200 feet of it; a man appeared standing upon the right-hand side of the car ahead of him, which would have prevented his turning to the right side of the road, and he then drew off to the left with a view of passing, if possible; that this was the proper way to pass until he discovered an approaching car, and at this time he was confronted by a sudden emergency; that his attention was summoned to different and unexpected facts, unpredictable and rapidly changing situations. There were elements of surprise and he was called upon to make a momentary decision. The time for action was limited to a few seconds; deliberation could not be indulged; it was necessary to act under the impulse of the moment; there was no other course in which he could have directed his car that would have been less disastrous. Any prudent person may have done likewise, or worse, under the same circumstances. So it appears that when different persons mentally shake together the bits of evidence, as in a kaleidoscope, they see different pictures formed by the same elements.

Appellant contends that plaintiff is not entitled to have his conduct measured by the rule applicable to one who is confronted by an unexpected emergency, and that the emergency arising in this case was due solely to the conduct of plaintiff. There were unexpected and unpredictable situations for which plaintiff was not responsible. There was the stationary car very near the center line of the highway. There was the sudden appearance of a man on the right-hand

side of the car, as well as the unknown approach of a car from the opposite direction. Plaintiff was entitled to have his conduct measured in view of all the facts and circumstances. The facts do not clearly justify a judicial pronouncement that plaintiff was guilty of negligence as a matter of law. The questions of the proximate cause of the casualty and of plaintiff's contributory negligence were for the jury's determination, and the trial court was not in error in overruling defendant's demurrer. The following cases support the ruling made: Clason v. Lenz, 332 Mo. 1113, 1119, 1120, 61 S. W. (2d) 727; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S. W. (2d) 143; Mayne v. May Stern Furniture Co. et al. (Mo. App.), 21 S. W. (2d) 211; Peck v. W. F. Williamson Advertising Service, etc. (Mo. App.), 68 S. W. (2d) 847; Munden v. Kansas City, Mo. (Mo. App.), 38 S. W. (2d) 540; Jones v. Southwest Pump & Machinery Co., 227 Mo. App. 990, 60 S. W. (2d) 754.

The next point urged by appellant is that the court erred in admitting in evidence testimony that plaintiff suffered hernia in the casualty, and erred in refusing to strike out the testimony of plaintiff that he suffered a hernia, for the reason that such evidence is broader than the pleading. The pertinent part of the petition charges:

"That as a direct result of each and every negligent act on behalf of the defendant, plaintiff was caused to sustain severe and permanent injuries, to-wit: That his back, shoulders, arms, chest, all of the muscles, ligaments, tendons, nerves, tissues, bones, vertebrae, joints, and flesh thereof, were wrenched, sprained, bruised contused, lacerated and torn; that all of the muscles, ligaments, tendons, nerves tissues, bones, and organs of the abdominal and pelvic regions were wrenched, sprained, bruised, contused, lacerated, torn and misplaced; that his hips, and muscles, ligaments, tissues, nerves, bones, and joints thereof were wrenched, sprained, bruised, contused, torn and dislocated; that his legs, knees, and ankles, the muscles, ligaments, tendons, nerves, tissues, bones, and flesh thereof, were wrenched, sprained, bruised, contused, lacerated and torn; that plaintiff sustained a severe nervous shock; that plaintiff has in the past suffered, and will in the future suffer on account of said injuries, bodily pain, mental anguish, headaches, dizziness, loss of sleep and rest, loss of earnings of his labor, expenses for medicine and medical attention; the exact amount of said expenses being unknown to plaintiff at this time; all to his damage in the sum of Three Thousand and No/100 ($3,000) Dollars."

Relative to this point respondent contends that the evidence that plaintiff sustained hernia as a result of the collision in question was properly admitted; that the allegations of the petition are broad enough to include hernia; that defendant did not lodge a proper or timely objection or continue to object to the admission of like

testimony; and that defendant's motion for a new trial contrains no assignment of error sufficient to embrace the point now made.

The first reference to hernia appears in the testimony of plaintiff while being questioned by his counsel. The record shows the following:

"Q. (By Mr. Thompson) You had an injury to your right hip? A. I had an injury to my right hip; and also a hernia in the lower groin.

"Mr. Rogers: I move to strike that out as not within the pleadings.

"The Court: I don't know. I will have to look and see.

"Mr. Thompson: Yes it is.

(Reference was made to the pleadings.)

"The Court: Do you think that is tearing of ligaments?

"Mr. Rogers: I don't believe there is sufficient allegation in the pleadings. They must plead something special.

"The Court: Overruled."

The defendant duly excepted. When the subject was next mentioned, counsel for defendant again evidenced an objection that it was "not within the pleadings." Later on the testimony of plaintiff and his physicians to the fact that hernia had occurred was received without additional objections by the defendant. The result of the ruling of the court was to admit evidence of hernia.

It is obvious that the objection made was directed to the insufficiency of the pleading to permit the proof offered; that the court so understood it, and made its ruling after an examination of the pleadings. The objection and exception were properly lodged in the record, and when the objection was once made defendant was not required to continue to object each time the subject was mentioned in order to avail itself of the point on appeal. [Hart v. Kansas City Public Service Co., 154 S. W. (2d) 600, 603, and cases cited.]

The general and specific statements of injury are not sufficient to inform defendant or the court that plaintiff would claim hernia as one of the results of his injury. The petition is insufficient to admit evidence of hernia, and to permit plaintiff to recover special damages on that account, in the absence of proof that hernia was a necessary result of the injuries alleged. There was no such proof. If the special injury of hernia could be shown to be the *inevitable and necessary result* of the injuries alleged, then the pleading would be sufficient; otherwise to recover for such special injury the petition must specifically allege the special or particular damage claimed to have been done or contain allegations of such nature as might be said to embrace within their terms the condition sought to be shown. Such has been the announced rule of practice for so long a period that it hardly calls for the citation of authority. However, some of the leading cases upon the subject are the following: Hall v. Coal & Coke Co., 260 Mo. 351, 370; Knaup v. Western Coal & Mining Co.,

342 Mo. 210, 114 S. W. (2d) 969, 976; Grott v. Shoe Company (Mo.), 2 S. W. (2d) 785, 787; State ex rel. v. Allen, 124 S. W. (2d) 1080, 1083; Chambers v. Kennedy (Mo.), 274 S. W. 726, 730; Hart v. Kansas City Public Service Co., 154 S. W. (2d) 600. These and many other cases which might be cited present instances of pleadings insufficient to embrace the condition sought to be shown at the trial.

The assignment of error in the motion for new trial upon this subject is in these words:

"The court erred in admitting incompetent, irrelevant, prejudicial and immaterial evidence offered by the plaintiff, over the objection and exception of the defendant."

The assignment was sufficient to justify a review of the point now raised on appeal, and it has been so held and consistently ruled in civil cases ever since the decision of Wampler v. Atchison, T. & S. F. Ry. Co., 269 Mo. 464, 190 S. W. 908. [See State ex rel. v. Reynolds, 278 Mo. 554, 556; Mott v. C. R. I. & P. Ry. Co. (Mo.), 79 S. W. (2d) 1061; State ex rel. v. Ellison, 282 Mo. 660, 222 S. W. 783; Bobos v. Krey Packing Co., 317 Mo. 108, 114, 296 S. W. 157.] The admission of the foregoing evidence was plainly prejudicial and particularly harmful in this case because the record discloses that hernia, which was claimed to have been produced by the injury, was by far the most serious of any injury shown in the case. The jury awarded plaintiff the full amount demanded in the petition. Evidence of hernia was improperly admitted. The only way to relieve the effect of this error is to reverse the judgment and remand the case.

In view of the foregoing conclusion it is unnecessary to give extended consideration to the remaining assignments. They question the size of the verdict and the propriety of the ruling of the court in reference to the alleged misconduct of counsel in argument. There were instances during the trial, and during argument, where proper amenities were disregarded and the scope of legitimate debate exceeded. By oral instruction the court attempted to correct these matters, and they were not regarded by the court as sufficiently serious to justify a new trial. The good judgment of counsel will not permit a recurrence of impropriety if the case is tried again. For the error shown the judgment of the court should be reversed and the case remanded. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the case remanded. All concur.