William E. HEITER (Plaintiff), Respondent,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation (Defendant), Appellant.**

No. 29081.

St. Louis Court of Appeals. Missouri.

Feb. 15, 1955.

Motion for Rehearing or to Transfer to Supreme Court Denied March 11, 1955.

Warner Fuller, Arnot L. Sheppard, John P. Montrey, St. Louis, for appellant.

Jack H. Ross, Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for respondent.

HOUSER, Commissioner.

This is an action for damages brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against Terminal Railroad Association of St. Louis on account of personal injuries sustained by William E. Heiter, a mail handler, while working on defendant's mail conveyor belt. From a judgment for $5,000 entered on a jury verdict the railroad association has appealed to this court.

The petition alleged that while plaintiff was working on a motionless conveyor belt, with his right hand near a metal slide forming part of the mechanism, a fellow servant named Gage, acting within the scope of his employment, negligently struck plaintiff's right hand with a metal crowbar, or struck the slide thereby causing the slide to strike his right hand. Plaintiff charged negligence in (1) "that defendant, through the said Gage, then and there so negligently and carelessly handled, struck with, and swung the said crowbar as to cause, allow, and permit the same to strike plaintiff's right hand, or to strike the said 'slide' near to plaintiff's right hand, and to cause said 'slide' to strike plaintiff's right hand;" and (2) in failing to warn plaintiff of his intention to handle, swing and strike with the crowbar. The latter assignment was abandoned in the course of the trial. The answer consisted of a general denial coupled with a plea of contributory negligence.

Plaintiff was a member of a crew which was employed to keep the mail flowing freely over the system of conveyor belts and chutes by which parcels and mail bags were transported from one part of defendant's New Facility Building to another. The endless conveyor belt, which is 42 inches wide, moves parcels and bags in a continuous stream to the west end of the belt, from which they fall into a metal slide or chute which runs from an upper floor to the first floor of the building. Upon entering the metal chute mail bags and parcels slide by gravity to the first floor. Between the west end of the belt and the metal chute there is a space or slot 1 to 1½ inches in width. Occasionally the metal labels on mail bags would fall into this slot, get "hung" or caught and cause a "jam" or piling up of mail at the west end of the conveyor belt, and that is what happened on the occasion in question. Several labels were hung in the slot. Plaintiff and another member of the crew named Russell Gage went to the place where the jam occurred. The moving conveyor belt was stopped. They climbed onto the belt. To relieve the tension between the rounded belt drum and the end of the metal chute (so that the bag label could be pulled out of the slot) Gage, using a 3-foot metal crowbar, pried on the metal chute. The force of the prying enlarged the space or slot between the belt and the chute until it was about 2–2½ inches wide, which enabled them to withdraw the bag labels, release the bags and send them on down the chute. In so doing, however,

the end of the metal chute was sprung or bent. The bending put a "kink" in the end of the metal chute. Plaintiff looked down into the enlarged opening of the slot, where he saw a small parcel and some letters and papers which accidentally had fallen out of a mail bag, slipped through the slot and dropped onto a small ledge under the chute. It was the business of the crew to retrieve this delayed mail and get it into the course of delivery. Plaintiff called to Gage to retrieve the articles and together they began to do so. Plaintiff kneeled down on his knees, placed his hand in the slot and "fished" out some of the letters with his fingers. While the two men were engaged in this effort plaintiff noticed that the slide had been sprung. Commenting on the fact, plaintiff told Gage that it would have to be brought back into shape or else mail would hang up more than ever at that point on account of the larger opening. Plaintiff was on his knees and left hand, reaching in with his right hand. After plaintiff had retrieved four or five letters and the small parcel and while Gage was at a position behind plaintiff or at his side the crowbar, swung by Gage, either struck plaintiff's right hand or struck the metal chute thereby catching his hand, while it was partly in the slot, for his right hand received a violent blow, as a result of which the tip end of his ring finger was smashed and crushed. Gage swung the crowbar on his own initiative. Plaintiff did not tell Gage to swing the bar. Gage gave plaintiff no warning of any kind that he was going to swing it. Gage was in a position where he could see what plaintiff was doing. Gage testified that at the time of the injury he and plaintiff were approximately side by side, with plaintiff on Gage's left. Thinking that all of the mail had been taken out of the slot, Gage, while sitting down on the belt, hit the chute twice with the crowbar with an up and down or pile-driver motion. At that time he did not see plaintiff's hand in the way. Then he got up to his feet, raised the crowbar and came down with it, striking the chute. As he raised the crowbar he didn't see plaintiff's hand or the metal chute. There is an angle iron which is part of the framework supporting the sides of the conveyor belt-way and a nearby electric motor. The angle iron was in the way of his view, and blocked his vision. As he came down with the blow Gage saw plaintiff's hand coming out of the slot with a piece of mail. It was then too late to interrupt the swing. Plaintiff testified that it is not the custom to use a crowbar to straighten chutes bent in the process of prying out bag labels, and that he had never seen a crowbar used thus; that the correct procedure is to call the maintenance crew and have them bring the chute back into shape with a small sledge hammer. Gage testified that previously he had used the crowbar to straighten out metal chutes; that it is up to the crewman to determine whether he should call the maintenance man or remedy it himself with the crowbar.

Appellant's first point is that the trial court erred in not declaring a mistrial when Dr. Harry G. Moore, called to the witness stand by plaintiff, testified that plaintiff complained to him of pain extending into plaintiff's right wrist and forearm. Plaintiff had testified without objection that sometimes it hurt him up into his muscle. Later he testified that "at the end of the day's work I start feeling it here and it goes in the muscle." At that time counsel for appellant objected on the ground that injury throughout the length of the arm was not pleaded. Plaintiff's counsel agreed that the objection was well taken. The court sustained the objection and at the request of appellant's counsel instructed the jury to disregard plaintiff's testimony about the wrist and arm. Thereafter, during the direct examination of Dr. Moore, in answer to a question about the complaints plaintiff made to him at the time of his examination on October 12, 1953, the doctor testified: "Well, he came in and complained of having trouble with his right hand following an injury that he had had." Counsel for appellant objected that the question was improper on the ground that it should be limited to complaints of things from which plaintiff was suffering while in the doctor's office, and should not include complaints of what

plaintiff had experienced in the past. This objection was overruled and the doctor, continuing, testified: "Well, he complained of having pain and loss of grip in the right hand, and he stated that it had been bothering him since he had an injury in July. He told me he had been in a hospital, he worked for the railroad, and had been in the Missouri Pacific Hospital, and they said he had a fracture of the distal end of the end of the ring finger. Q. I see. A. And he had tried to work—I think he said he went back to work on the 3rd of October. He tried to go back to work and he couldn't use the hand. When he tried to grip anything or work with it he had a severe pain starting at the end of the finger at the site of the injury and going up into his wrist and up into his forearm. And also that—." At this point counsel for appellant interrupted the doctor's recital in order to make an objection. The objection itself was interrupted by the court before counsel had stated the reason for his objection. The court stated: "I will sustain an objection to that part of the description that pertains to the wrist and arm. There is no pleading about any injury to the wrist and arm, doctor." Then counsel for appellant requested the court to instruct the jury to disregard the testimony about the wrist and arm. This request was granted and the court admonished the jury to "disregard any testimony about any injury to the wrist or arm unless the pain results from the injury to the finger." The doctor immediately volunteered this statement: "That is what I stated, that the pain he complained of started in the distal end of the finger at the site of the injury and going up into the arm, into the forearm and wrist." Counsel for appellant thereupon moved that the jury be discharged and a mistrial declared, assigning as his reason that plaintiff had not pleaded pain, suffering or injury to the forearm and wrist. Counsel for plaintiff expressed the opinion that it was not necessary to plead every type of remote pain that one has from an injury, but went on to say: "As I said before, and I will say again, I am willing to leave that part of the testimony out." The motion to declare a mistrial was overruled by the court. No other or further action by the court was sought by counsel for appellant.

■ The admission of this testimony violated the rule that a doctor may not relate to the jury statements of pain, symptoms, etc. made by the patient to the doctor which were experienced by the patient before the time of the doctor's examination, see Jones v. Terminal R. R. Ass'n of St. Louis, Mo.App., 246 S.W.2d 356, and authorities cited; Kenney v. J. A. Folger & Co., Mo.App., 192 S.W.2d 73, loc. cit. 77, but appellant was not prejudiced by the error. The evidence improperly admitted was cumulative merely. Plaintiff previously had testified to the same things. Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043, loc. cit. 1047; John v. Aetna Life Ins. Co. of Hartford, Conn., Mo.App., 100 S.W.2d 936, loc. cit. 941. Also, appellant did not contest the fact that plaintiff was injured on July 27, 1953; that he went to the hospital; that he had a fracture of the distal end of the right ring finger; that he was "bothered" by the pain of the injury between July 27 and October 12, 1953; and that he went back to work on October 3 but couldn't use the hand. Appellant does not contend that plaintiff's ability to grip things was not affected as of the date of the complaints to the doctor. See Jones v. Terminal R. R. Ass'n of St. Louis, supra, syllabus 4, 246 S.W.2d loc. cit. 359. Furthermore, there is an element of waiver involved. After the doctor related plaintiff's complaints of fracture, hospitalization, past pain, loss of grip, return to work, inability to work, and pain in the finger, wrist and forearm, counsel for appellant sought to exclude nothing more than that part of the testimony relating to pain in the wrist and forearm. He did not move to exclude or admonish the jury to disregard the other evidence. Nor did appellant request a limiting instruction. If there was danger that the jury would take Dr. Moore's statement of what plaintiff told him as to these past experiences as proof of their truth appellant should have asked for an instruction to the contrary. See Corbett v. Terminal

R. R. Ass'n of St. Louis, 336 Mo. 972, 82 S.W.2d 97, loc. cit. 103.

■ Appellant further claims that the admission of this testimony was improper because pain in the wrist and forearm was not pleaded as a special item of damages. Plaintiff pleaded fracture of the ring finger of the right hand, injury to the nerves, muscles, tendons, etc. of the right hand, and pain, weakness, limitation of motion and impairment of the normal function of the aforesaid bodily members. The testimony concerned severe pain going up into plaintiff's wrist and forearm. Since there was no evidence that pain in the wrist and forearm is the necessary and inevitable result of such an injury to plaintiff's finger, the testimony was inadmissible. Knaup v. Western Coal & Mining Co., 342 Mo. 210, 114 S.W.2d 969; Proctor v. Ruppert, 236 Mo.App. 684, 159 S.W.2d 328. The error, however, does not justify a reversal of the judgment. Appellant did not register any objection when plaintiff first testified to pain in his arm muscle. When plaintiff referred to such pain a second time the court *sustained* appellant's objection and instructed the jury to disregard plaintiff's testimony about the wrist and arm. Plaintiff's counsel openly conceded that the objection was well taken and that the jury should be instructed to disregard it. When the doctor referred to plaintiff's complaint of pain in the wrist and forearm the court did not wait for counsel to state the reason for his objection, but interrupted the witness, stating that the court would *sustain* an objection on this ground, and thereafter instructed the jury twice to disregard the testimony about plaintiff's wrist and arm. While the force of the last admonition was tempered by the statement of the court: " * * * unless the pain results from the injury to the finger," we do not agree with appellant that the improper testimony "went to the jury bearing the trial court's stamp of approval." Quite to the contrary it was expressly excluded from the consideration of the jury by the action of the court, and no proof was offered thereafter to show that pain in the wrist and forearm is the necessary and inevitable result of such an injury. Finally, plaintiff's counsel in open court and in the presence of the jury voluntarily withdrew the testimony. Under these circumstances we find that appellant's rights were not prejudiced.

Appellant next challenges Instruction No. 1 on the ground that it was too general; that it did not require a finding of sufficient facts to enable the jury to determine intelligently whether or not defendant's servant committed negligence, and gave the jury a roving commission to convict defendant of negligence on any set of circumstances they might deem sufficient whether or not in law that set of circumstances could constitute negligence. Instruction No. 1 directed a verdict for plaintiff upon finding that while plaintiff's right hand was placed on the conveyor Russell Gage struck a portion of the conveyor near plaintiff's hand with a metal bar; that in so doing Gage failed to exercise ordinary care to avoid injuring plaintiff's hand; that Gage was thereby negligent and that such negligence and failure directly caused injury to plaintiff's hand.

■ This contention must be sustained. The instruction failed to provide the jury with any guide or standard by which to determine what particular acts of omission or commission would constitute negligence. Under this instruction the jury could have determined that Gage was negligent in not warning plaintiff, or in not looking before striking, or in using a crowbar instead of a hammer, or in not calling on the maintenance crew to make the repair, or in delivering the blow from a standing position instead of while sitting, or in any particular which may have occurred to the jury as an act of negligence. The jury was free to fix its own standards of conduct and to determine to its own satisfaction what facts were necessary to be found in order to constitute negligence under the law. Munoz v. American Car & Foundry Co., 220 Mo.App. 902, 296 S.W. 228; Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30; Paisley v. Kansas City Public Service Co., 351 Mo. 468, 173 S.W. 2d 33; Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045.

Not only is the instruction to be condemned for generality but it is erroneous in that it fails to require a finding that Gage knew or in the exercise of ordinary care could and should have known that plaintiff's hand was on or about the conveyor and in close and dangerous proximity to the place where Gage intended to strike the blow. Defendant's liability depends upon Gage's knowledge, actual or constructive, that the delivery of a forceful blow with a crowbar under the circumstances would endanger the safety of plaintiff. In the absence of such knowledge there would be no duty toward plaintiff, and in the absence of a duty to plaintiff the swinging of the crowbar would not constitute negligence. Had it been unmistakably apparent from the testimony of Gage, who was a witness for defendant, that knowledge on his part of the danger to plaintiff was a conceded fact, the instruction would not be subject to this criticism, for in that event the question of knowledge would no longer be at issue and would not be required to be submitted in an instruction. Blew v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 245 S.W.2d 31; State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W. 2d 788. But that is not the situation. To the contrary, the sum and substance of Gage's testimony is that he had no idea that plaintiff's hand was in peril. Gage testified that he thought all of the mail had been taken out of the slot. In his mind there was no further occasion for plaintiff to place his hands in the slot or on the conveyor. Plaintiff had told Gage that the chute, which had been sprung by the prying, would have to be brought back into shape. From this Gage may have concluded that plaintiff was expecting him to correct the condition at that time. While seated, Gage undertook to do so. He struck the chute twice with the crowbar. At that time plaintiff's hand was not in a place of danger. When Gage stood up in an erect position, preparing to swing the crowbar in an over-the-shoulder movement, Gage did not see plaintiff's hand. He said that the angle iron obstructed his view and prevented him from seeing plaintiff's hand or the metal chute. Although Gage was mistaken in his belief that the way was clear for a blow, reasonable minds might conclude that he was fully justified in striking the blow without taking other or further precautions. Whether Gage was negligent in delivering the blow was a question for the jury under proper instructions. Plaintiff's main verdict-directing instruction should not only contain a proper standard for the guidance of the jury but also a requirement that the jury find the essential fact that at the time and place Gage struck the metal chute with the crowbar Gage knew or in the exercise of ordinary care could and should have known of the danger of injury to plaintiff.

In view of the necessity of remand there is no occasion to inquire into appellant's charge that the verdict is excessive.

On remand respondent should be permitted to amend his petition, if so advised, so as to charge specific acts of negligence and knowledge, actual or constructive, on the part of Gage of the danger to plaintiff, insofar as may be warranted by the evidence.

For error in Instruction No. 1 the Commissioner recommends that the judgment be reversed and that the cause be remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

E. M. RUDDY, Acting Presiding Judge, and SAM C. BLAIR, Special Judge, concur.