Paul LARSON, Plaintiff-Respondent,

v.

**ALTON AND SOUTHERN RAILROAD COMPANY, a Corporation,** *Defendant-Appellant.*

No. 32921.

St. Louis Court of Appeals.

Missouri.

July 16, 1968.

Rehearing Denied Sept. 4, 1968.

Bartlett, Stix & Bartlett, Daniel Bartlett, Jr., St. Louis, for defendant-appellant.

Gray & Sommers, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

This was a Federal Employers' Liability Act case tried to a jury in which plaintiff received a verdict for $12,000.00 for injuries to his back allegedly received as a result of defendant's failure to provide him with reasonably safe conditions for his work or with reasonably safe appliances to perform that work. Defendant appeals contending the trial court erred in overruling its motion for mistrial due to plaintiff's reference to his family while testifying; in giving plaintiff's verdict directing instruction; in permitting plaintiff's counsel to comment in closing argument upon the differences between the common law and the Federal Employers' Liability Act; and that the verdict is excessive.

The facts bearing upon these allegations of prejudicial error, stated in the light most favorable to plaintiff, show that during plaintiff's case in chief and while his counsel was inquiring as to his physical condition the following statements were made: "Q You do have trouble with your back while you are working? A Yes. Q Tell the jury about that. A Well, I got to watch myself how I pick anything up. If I bend over and straighten up too fast, it hurts. If I bend over and straighten myself—anyway, I have difficulty straightening up. Q Have you noticed any back difficulty of the type that you are speaking of at any other times than the ones you have mentioned, that is, when you are sleeping or when you get up in the morning or while you are working, lifting anything? A When I am standing holding anything—it don't have to be heavy—like our baby 12 months, 13 months old—I can't hold him any length of time at all. It feels like, it just tightens my back up. Q How much does he weigh? A Twenty pounds. MR. BARTLETT: Your Honor, may we approach the Bench? MR. SOMMERS: Wait a minute. Let's finish—MR. BARTLETT: I would like to approach the Bench. (Thereupon the following proceedings were had outside the hearing of the jury.) MR. BARTLETT: I would like to move this jury be discharged and a mistrial be declared because of the remark of the witness, which was most prejudicial, in reference to lifting the baby. It tends to inflame and prej-

udice the jury against the defendant. * * * THE COURT: There is a motion for mistrial, and defendant's motion for mistrial will be denied at this time. I am now cautioning counsel for plaintiff to admonish his client not to refer again throughout the course of this trial to how many children he might have or may not have. I am going to caution counsel for plaintiff not to argue, if this case goes to the jury, the fact it causes him pain when he lifts his 13-month old baby who weighs twenty pounds. MR. SOMMERS: I will not do so, Your Honor."

Plaintiff's verdict directing instruction informed the jury their verdict must be in his favor if they believed "First, defendant failed to provide (a) reasonably safe conditions for work, or (b) reasonably safe appliances, and Second, defendant in any one or more of the respects submitted in paragraph First was negligent, and Third, such negligence directly resulted in whole or in part in injury to plaintiff." The transcript also discloses that in its motion for new trial the defendant's allegation of error with regard to the giving of this instruction was to the effect the trial court's action constituted error "since this instruction did not set out each and all of the necessary findings of fact to establish liability on the part of defendant under the Federal Employers' Liability Act."

During plaintiff's counsel's closing argument the following statements were made together with the objection as shown: "Many of you are familiar with the fact that if you drive an automobile through an intersection and another fellow drives an automobile through the intersection and neither one of you stop, neither one of you sees the other fellow, neither one is any more to blame than the other and therefore, under Missouri law, common law, neither has the right to collect from the other. In other words, if you are contributorily negligent, as we call it, that is a bar to your recovery; you have heard of it. This is not so under the Federal Employers' Liability Act. The courts of the United States have determined—MR. BARTLETT: Your Honor, aren't we getting a little far afield when he talks about the law under the Federal Employers' Liability Act? He is talking about what the law in general is. THE COURT: Members of the jury, you will be guided by the instructions I have given as being the law that controls this case. MR. SOMMERS: The courts of the United States have decided that if a railroad is negligent, in whole or in part and causes injury, the employee may recover. We are not concerned with the acts of the employee; we are not concerned with anything other than whether this jury determines whether or not the railroad, in either respect in this instance, in whole or in part, caused injury to this man. * * * There is nothing in the Court's instructions, in His Honor's instructions, that tells you that any act or omission on the part of Paul Larson constitutes a bar or is in mitigation of his damages in any respect. That is what it means. I hope I can make that clear, because this law is different. It is true it has come about specifically to protect railroad employees in injuries on their jobs."

The evidence bearing upon the issue of verdict excessiveness was that during the night following plaintiff's injury his back hurt him off and on. The next morning he had difficulty getting out of bed. He could not straighten up. Later that morning he went to his car foreman and made a written report of the accident. He was sent by the foreman to see the company doctor who gave him pills, advised him to apply heat to his back and put a board under his mattress, which he did. He was still unable to straighten up or do anything about the house and went back to see the doctor about three days later. The doctor made out a requisition and sent him to Missouri Pacific Hospital in St. Louis where he remained for twelve days receiving various examinations and therapy which improved his condition a "good deal". He went back once a week for

four or five weeks after his discharge seeing various doctors who gave him medicine and told him to apply heat at home. He did so and continued to improve until he was released to go to work on October 7, 1964. The admitting diagnosis at the hospital was "Arthritis, lumbar spine; low back strain." He had muscle spasms and tenderness in his lumbosacral region. Straight leg raising tests performed in the hospital were positive to forty-five degrees on the left leg. The right leg was not limited. On the 16th of August, while in the hospital, there was noted that he still had paravertebral spasm, leg aches and increasing pain. He continued to go to the hospital for care and treatment as an out patient through the remaining portion of 1964, into July of 1965, and was last seen at the hospital February 1, 1966, when the examining physician noted plaintiff "probably has chronic back sprain." He was advised to return for consultation in regard to pain and in regard to a back brace.

Plaintiff stated that he has continual difficulty with his back. He wakes up two or three times a night with pain in his back, and testified he often can get relief only by kneeling down and lying across the bed in a bent position. He sometimes has to sleep that way. At the time of the trial he was still having to do this. Plaintiff usually gets up about eight in the morning, and every morning his back is stiff and it takes him quite a while to get straightened up.

At work he has to watch himself, particularly when he picks anything up. If he straightens up too fast, it hurts him. Standing erect for any length of time bothers him. His monthly earnings prior to the occurrence were as high as $786.00 per month. He was off work and lost wages during the months of August, September, and until the time of his return to work on October 7, 1964, thus incurring a wage loss in excess of Thirteen Hundred Dollars ($1,300.00).

Dr. Deyton, who examined the plaintiff on January 8, 1967, testified plaintiff had a limp of the left leg with his body listing to the left. Rotation of the head to the right was restricted by fifteen percent with pain produced on the left side. On tilting to the right there was a fifty percent restriction. The tilt to the left was restricted to sixty percent. The short flexors and extensors of the neck did not function. In regard to his low back, he found the plaintiff could only bend to within thirteen inches of the floor while the normal range for a man of plaintiff's age is five or six inches. The pain going down the back of plaintiff's legs prevented him from so doing. There was a positive Lasegue's test on the right leg. A positive Patrick's test showed plaintiff lacked thirty-five degrees of normal. Palpation revealed tenderness of the muscles along the spine. There was reduced sensation in the heel on the right side and across the bottom of the heel in what is known as the S–1 dermatome.

Dr. Deyton diagnosed the plaintiff's injuries as a moderate strain of the neck, with myositis and fibrositis; a strain of the dorsal-lumbar back that was moderate and a strain of the lumbar spine particularly at the fifth lumbar and the first sacral segment, very severe, with myositis and a discogenic syndrome (based on the sensory findings and the reflexes), specifically involving the root of the nerve between L–5 and S–1. He was of the opinion that these injuries directly resulted from the accident sustained by plaintiff and that they were permanent. He stated plaintiff will continue to have exacerbations and remissions of pain and discomfort and stiffness in his back. He ruled out any pre-existing arthritis as the cause of plaintiff's pain, discomfort and disability but was of the opinion that any arthritis that existed previous to the injury would have been aggravated or made worse.

Dr. Vilray Blair, who examined on behalf of defendent, stated plaintiff complained to him of pain in the lower back,

with leg radiation, pain in the lower extremity and pain in the cervical spine of the neck. He testified he could find no objective signs of disability. On cross-examination by the defendant's counsel plaintiff was asked the following questions and gave the following answers: "Q (By Mr. Bartlett) You don't have any disability from your neck at this time, do you? A It hurts when I move. Q You don't have any disability in the sense you are not able to do anything in your employment? A Yes, that's right. Q Isn't that also true of your back? A I do my work, yes. Q You do your work. (no?). A Yes."

■ With reference to the trial court's action overruling defendant's motion for mistrial due to plaintiff's statement his back hurt him when he was holding his 13-month old child, it should first be noted it is defendant's duty in such circumstances to make known to the court the action he desires the court to take. Civil Rule 79.01, V.A.M.R.; Alvey v. Sears, Roebuck & Co., Mo., 360 S.W.2d 231, l.c. 234; Heiter v. Terminal R. Ass'n of St. Louis, Mo.App., 275 S. W.2d 612, l.c. 615; Stafford v. Lyon, Mo., 413 S.W.2d 495, l.c. 497, 498. Defense counsel moved only for a mistrial. There was no motion to strike nor request for the court to instruct the jury to disregard plaintiff's statement. Accordingly, the question of whether or not the trial court should have taken either or both of such actions is not before us.

■ In ruling upon whether or not a mistrial should have been granted we first note there was no attempt by his counsel to elicit such information. The disclosure was the result of plaintiff's voluntary statement in answer to a proper question. Moreover, the matter was not emphasized. It did not arise in such a manner as to draw the jury's attention to plaintiff's family status and all of the motions, argument and rulings by court and counsel in connection with this matter were held out of the hearing of the jury. In Daniels v. Banning,

Mo., 329 S.W.2d 647, it was held the disclosure in the opening statement and in the evidence that plaintiff had two children was not, under the circumstances of that case, error which affected the merits and required reversal of the judgment. The situation is analogous in the appeal at bar. The disclosure plaintiff had one child 13 months old, occurring as it did without any emphasis being placed upon the matter and resulting from plaintiff's voluntary statement given in response to a proper question by his counsel, is not such an error as to require us to hold it affected the verdict and requires reversal of this judgment.

■ We must rule defendant's allegation of error as to the giving of plaintiff's verdict directing instruction against it without reaching the merits of that issue. We have earlier herein set out the pertinent language from defendant's motion for new trial going to this issue. That same language is used in defendant's brief as Point IV of the allegations of error. The argument under that point, however, raises two entirely different issues. Defendant therein contends there was no evidence the appliances provided by it were not reasonably safe and the instruction should not have been given as it failed to require the jury to find it had knowledge of danger existing in the conditions in which plaintiff was required to work. Each of these complaints of error are specific and neither was raised in defendant's motion for new trial. Neither were any such objections made when the instructions were offered. Such issues were not therefore properly preserved for our ruling in this appeal. Civil Rule 70.02, 79.03, V.A.M.R.

■ There is some argument in defendant's brief to the effect that this instruction, as alleged in the motion for new trial, was faulty and should not have been given because it did not include " * * * all of the necessary findings of fact to establish liability on the part of defendant under the Federal Employers' Liability Act." Such argument also fails to raise an issue

requiring our ruling. The purpose of the rule requiring specific allegations of error is to give the trial judge an opportunity to correct that error. The situation presented in this appeal is analogous to that presented to our Supreme Court in Davis v. City of Independence, Mo., 404 S.W.2d 718. The defendant in Davis contended the trial court should have allowed it to give an offered instruction " ' *   *   * as said instruction was a proper instruction of the law and deprived defendant of a defense and of its right to have the jury consider evidence in its favor.' " The Supreme Court ruled such an assignment of error is defective under Civil Rule 70.02, supra, for the reason that it does not state wherein and why the ruling of the trial court is claimed to be erroneous. That is the fault with this assignment of error in the instant appeal. It follows defendant's allegation of error with regard to the giving of plaintiff's verdict directing instruction does not preserve any error requiring our ruling and its contentions in that regard will not be considered. Civil Rule 70.02, 79.03, supra; Davis v. City of Independence, supra.

■ We pass now to defendant's contention the trial court erred in allowing plaintiff's counsel to comment in closing argument upon the differences between the common law and the Federal Employers' Liability Act. The rule in this state has long been that an objection to an argument or misconduct of counsel during trial must be distinctly made with the request for instant action and ruling by the trial court. See Minor v. Lillard, Mo., 306 S.W.2d 541; Fennell v. Illinois Cent. R. Co., Mo.App., 383 S.W.2d 301; Samborski v. Price, Mo. App., 417 S.W.2d 205; Hodges v. Johnson, Mo.App., 417 S.W.2d 685. In Fennell, Samborski and Hodges it was held an objection to an argument of counsel must be sufficiently specific to warrant an appellate court convicting the trial court of error and overruling the objection. We question whether defendant's statement to the court

rises to that level. But be that as it may, in Payne v. Stott, Mo.App., 181 S.W.2d 161, l. c. 165, it was held proper in argument to compare the degree of care required of a common carrier with that lesser degree of care required of a private operator of an automobile. The situation is analogous here. The argument of counsel was within the confines of the applicable law; it did not inject any false issues or misinform the jury; and it was not an attempt to give an instruction on the law different from that given by the court. Under such circumstances we hold the argument was permissible.

■ Defendant alleged in its motion for new trial and now contends the verdict is so excessive as to show bias and prejudice on the part of the jury requiring reversal and new trial as to that issue or, in the alternative, so excessive as to require a remittitur to comply with the doctrine of uniformity of verdicts for comparable injuries. The two types of excessive verdicts are set out in Bertram v. Wunning, Mo.App, 417 S.W.2d 120. This verdict does not fall within either category.

Even an excessive verdict does not in and of itself establish it resulted from bias, passion or prejudice without showing some other error committed at the trial. Boehm v. St. Louis Public Service Co., Mo., 368 S.W.2d 361, l. c. [9, 10] 369. Defendant urges the trial court's action overruling its motion for new trial and permitting plaintiff's counsel to comment upon the differences between an action at common law and one brought under the Federal Employers' Liability Act constitutes such errors. But, as held herein, such actions were not erroneous. Neither do we find in this record nor does defendant point out any other reason this verdict was so excessive as to show bias, passion or prejudice. Under such circumstances we are not authorized to set it aside and grant a new trial.

Defendant advances three arguments why we should order a remittitur. It refers to

the testimony of defendant's medical expert he found no objective evidence of disability; to plaintiff's testimony he still does his work and has had continuous employment; and there was no loss of earning power. Insofar as the testimony of Dr. Blair it is sufficient to note it does not constitute the evidence most favorable to plaintiff. Dr. Deyton found objective evidence of disability. Contradicting defendant's other two arguments are the facts that, although plaintiff continues in his job and does his work, he has constant trouble with his back, endures pain, loss of sleep, discomfort when standing for any length of time, and movement of his neck and back is restricted in range. To sleep at night he often must kneel on the floor with only his upper body across the bed. He suffers from a moderate strain of the neck with myositis and fibrositis; a moderate strain of the dorsal-lumbar back; a "very severe" strain of the lumbar spine with myositis and a discogenic syndrome very similar to that produced by an injured intervertebral disc. His injuries are permanent.

Defendant also urges us "* * * to consider Russell vs. Gulf, Mobile & Ohio R.R. Co. [Mo.], 397 S.W.2d 583," which involved, to quote from defendant's brief, "* * * what arguably appears to be 'injuries' similar to the case at bar." We cannot agree the injuries received by plaintiff in Russell are fairly comparable to those suffered by this plaintiff. Undoubtedly defendant cites the Russell case due to the disparity between the monetary loss therein suffered when compared to that suffered by this plaintiff; i.e., $21,000.00 contrasted to a loss of approximately $1,300.00. The verdict affirmed in Russell was for $25,-000.00. Of course, monetary loss is one of the factors the jury could consider in determining its award as well as a factor in measuring excessiveness of verdicts. However, it is but one factor and we weigh each case upon its own facts in determining that issue. Viewed in the light of the amount of the verdict in Russell and considering the much more serious and extensive injuries suffered by plaintiff we cannot hold that case requires our interference with this verdict. As contrasted to the Russell case that of Kiger v. Terminal Railroad Association of St. Louis, Mo., 311 S.W.2d 5, seems more analogous to the situation presented by the instant appeal. The injuries received by the plaintiffs in each case are remarkably similar. In Kiger, at 1. c. 15, the court summarized the injuries as follows: "* * * that plaintiff received painful, permanent injuries to the cervical and lumbar areas of the back; that he will permanently suffer pain therefrom; that he will develop arthritic changes in some years; that he is able to work although experiencing pain in so doing." Those are essentially the findings in the instant appeal. In Kiger the loss of wages totaled $1,440.00; in the instant appeal approximately $1,300.00. The affirmed award in Kiger was $20,000.00.

Kiger and Russell merely illustrate the wisdom of the oft repeated statement previously decided cases are of little assistance in determining the issue of excessiveness requiring a remittitur. The considerations bearing upon this issue are set forth in the Kiger case (see Kiger v. Terminal Railroad Association of St. Louis, supra, at l.c [19] 15.) Having such matters in mind, together with the facts in the instant appeal, we have concluded defendant's contention this verdict was excessive and requires a remittitur is without merit.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and JACK A. POWELL, Special Judge, concur.