OSCAR KNAUP v. WESTERN COAL & MINING COMPANY, a Corporation, Appellant.—114 S. W. (2d) 969.

Division One, April 1, 1938.

*Edgar J. Keating, William Aull, Jr., J. M. Challis* and *Robert B. Vaughan* for appellant.

*Sylvan Bruner, Cowgill & Popham* and *John F. Cook* for re-spondent.

218

FRANK, P. J.—Action to recover damages for personal injuries. Plaintiff recovered a judgment for $5000. On appeal to the Kansas

City Court of Appeals, the judgment was affirmed by a divided court. On dissent of SHAIN, P. J., the cause was certified here.

The majority opinion affirming the judgment was written by Commissioner CAMPBELL. That opinion correctly ruled the case. We, therefore, adopt it as the opinion of this court on the questions presented to the Court of Appeals. It reads as follows:

"Plaintiff was a coal miner in defendant's coal mine in Crawford County, Kansas, from 1930 to June 1, 1933. He brought this suit to recover for personal injuries alleged to have been caused in May and on June 1, 1933, by breathing foul air, gases and fumes while working in the mine. He had a verdict and judgment, from which the defendant has appealed.

"The petition pleaded the law of Kansas which, in so far as it is necessary here to state, provided that the operator of a coal mine shall 'provide and maintain airways of sufficient dimensions to supply the requisite amount of air to carry away or dilute and render harmless any inflammable gas or other noxious gases which may accumulate in the working places of the mine, . . . provide and maintain . . . ample means of ventilation and providing an adequate supply of good air to every person working in such mine.' The answer tendered the general issue, pleaded the Workmen's Compensation Law of Kansas, and that the commission of labor and industry and the courts of Kansas have exclusive jurisdiction of the subject matter of the action.

"If the petition or the evidence when considered in a light most favorable to the plaintiff brought the cause within the Compensation Law of Kansas, then the trial court had no jurisdiction and the cause should not have been submitted to the jury.

"The evidence shows that the plaintiff worked in the mine on May 4, 5, 17, 19, 31, and June 1, 1933; that during that time he, under the direction of defendant, was engaged in turning a branch or room from the room of a fellow workman; that he went to work each morning at 7:30 o'clock and after working a short time would have a headache, become weak and sick; that on May 31, he 'felt all right,' and went to work and after working ten or fifteen minutes had a headache, 'felt weak, couldn't stand up and trembly, . . . fell and crawled like I was drunk, and my nose and face would hit the bottom like I was drunk;' that he went into the entry where the air was good, was revived and returned to work, had the same experience and then left the mine; that although not feeling well he returned to the mine on the morning of June 1 and suffered the same experience he had suffered on the preceding day; that there was no current of air at his working place on any of the days in question; that his sickness while in the mine was caused by 'bad air' and that shots of black powder and dynamite were exploded

in the mine. It is unnecessary to further detail the evidence for the reason that defendant's counsel with commendable frankness in their brief say this: 'Plaintiff's contention was, that his evidence tended to show that he was injured as the result of breathing bad air containing harmful quantities of carbon monoxide gas; that dynamite had been used in the mine and had created carbon monoxide gas therein. Dr. Benage testified for plaintiff that the shooting of dynamite in coal mines could create carbon monoxide gas in harmful quantities and that plaintiff's injuries were the direct result of breathing bad air containing harmful quantities of carbon monoxide gas.'

"The main question is, was the injury caused by accident? It is not difficult to formulate a definition of the word 'accident' when that term is used in its usual sense. The difficulty arises in deciding whether or not the facts in a particular case show that a particular injury was due to accident. We have read the cases on this subject, cited in the briefs, and have arrived at the conclusion that whether each particular injury was or was not caused by accident, must be determined upon the facts of each case.

"The question as to whether or not plaintiff had a cause of action depends upon the interpretation of the law of Kansas. And the law of Kansas is what the Supreme Court of that state says it is. [Ramey v. Missouri Pacific Railroad Co., 323 Mo. 662.]

"In the case of Echord et al. v. Rush, 124 Kan. 521 (same case, 122 Kan. 260), the dependents of a deceased coal miner brought suit to recover for his death, alleged that the deceased was employed in the defendant's coal mine as a coal miner from October 5, 1923, to November 8, 1923, at which last named date he became sick as a result of breathing poisonous gases which had accumulated in the mine, and which caused his death on November 10, 1923.

"The court said:

" 'This action was brought as an ordinary action for damages to dependents for a wrongful death (R. S. 60-3203) of an employee of defendant, alleged to have been caused by the negligence of defendant in failing to comply with the safety provisions of the mining laws (R. S. 49-214 et seq.), by reason of which negligence poisonous gases accumulated in the mine, where the employee worked, and were necessarily inhaled by him day by day, whereby his system became gradually poisoned, resulting in his death. In the petition it was specifically alleged that the injury sustained by the employee did not come within the provisions of the Workmen's Compensation Act. The answer denied the negligence alleged, contained a plea of contributory negligence, and alleged that at the time of the alleged injury to the employee he and defendant were engaged in mining,

and were operating under the provisions of the Workmen's Compensation Act, which was the exclusive measure of recovery. . . .

" 'Here the case, as we now view it, turns, first, on the question of whether the death of the workman was the result of personal injury by accident, as that term is used in the statute. . . . The petition alleged that it was not so caused; that the injurious effect of the poisonous gas was gradual, from day to day. The answer denied these allegations, thereby putting the question in issue. The jury specifically found that the workman's death was not due to the sudden escape of poisonous gas inhaled by him, but that the real and proximate cause of his death was inhaling poisonous gas from day to day. This, under the authorities above cited, and especially Hendrickson v. Continental Fiber Co. (136 Atl. 375), supra, marks the case one not governed by the Workmen's Compensation Law. And, second, is there liability here for negligence? Since the Workmen's Compensation Law has no application, we consider the case as though that law had not been passed. The statute (R. S. 49-214 et seq.) requires certain provisions for the safety of workmen in mines. These statutes are not repealed by the Workmen's Compensation Law. In Smith v. Cement Co. (94 Kan. 501), supra, it was held the factory act was not so repealed; the same reasoning applies here. If the injury is not one which is compensable under the act, the ordinary rules applicable in negligence cases apply. [Brooks v. Coal & Coke Co., 96 Kan. 539, 152 Pac. 616.]'

"The Echord case was cited with approval by the Supreme Court of Kansas in which the meaning of the word 'accident' was determined 297 Pac. 418, 421. The opinions in the Echord case do not disclose the number of days that Echord worked in the mine nor the number of days on which he inhaled poisonous gas. The court, however, held that injury caused by inhaling gas from day to day was not an accident as that word is used in the Workmen's Compensation Law of Kansas, and that if death were caused by the sudden escape of poisonous gas inhaled by Echord, then death was the result of accident within the meaning of the Kansas statute.

"In the instant case plaintiff worked a part of six days and on each day inhaled carbon monoxide gas and on each occasion sustained injury therefrom. On the morning of May 31 when he went to work, he was feeling 'pretty good,' thought he was able to work. Shortly after beginning work he became quite sick due to inhaling bad air, had the same experience on the next day. The 'sudden escape' of gas did not cause the injury. The gas lurking in plaintiff's working place, caused him to be injured, not suddenly, but from 'day to day,' especially on May 31 and June 1.

"The defendant cites, among others, the following opinions of appellate courts of Missouri: Downey v. Kansas City Gas Com-

pany, 92 S. W. (2d) 580; Lovell v. Williams Brothers, Inc., 50 S. W. (2d) 710; Rinehart v. F. M. Stamper Company, 55 S. W. (2d) 729.

"In none of these cases was the usual meaning of the word 'accident' involved. In each case the question was the meaning of the term as it is defined in Section 3305, R. S. 1929; hence, the cases do not aid us in deciding the question here seeking solution.

"The defendant calls attention to opinions of the Supreme Court of Kansas in which the meaning of the word 'accident' was determined. There are statements in those cases (Gilliland v. Cement Co., 104 Kan. 771; Zelinkoff v. Mountain States Brush Company, 135 Kan. 247; Kearns v. Reed, 136 Kan. 36), which, in the opinion of the writer hereof, ascribe to the word 'accident' a meaning not in harmony with the ruling in the Echord case. However, in none of those cases were the facts similar to the facts in the Echord case. It is apparent that the facts in the Echord case are strikingly similar to the facts in the instant case. Accordingly, we hold that plaintiff's injury was not compensable under the law of Kansas.

"The defendant contends that the cause should not have been submitted to the jury for the reason that plaintiff's trial theory was that his injury was caused by inhaling carbon monoxide gas, and that such gas was generated by the explosion of powder and dynamite; that there was no direct evidence to support that theory and that plaintiff 'attempted to make out a case by piling inference upon inference.' In this connection the defendant argues that each of the following subjects rests on inference; That the headache and sickness were caused by bad air; that the bad air contained carbon monoxide gas in harmful quantities; that the carbon monoxide gas was generated by explosions of powder and dynamite; that the air current did not remove the dangerous gas; that though Dr. Benage testified that plaintiff's injuries were caused by breathing carbon monoxide gas, he also testified that the same condition could have been caused by 'drink' or faulty bowel elimination.

"The plaintiff, an experienced coal miner, testified as follows:

" 'Q. Do you know bad air headache when you feel one? A. Yes. . . .

" 'Q. When this condition came on you on May 31st what did you do? A. I went out in the entry a while and laid down in the fresh air. . . .

" 'Q. Yes, when you say you went out in the entry and laid down in the fresh air, just describe how you felt? A. My head felt like it was pounding and my heart would thump and I was weak and nervous and sick and couldn't stand up. . . .

" 'Q. How many days all together had you worked in that

room about that place just before June 1st? A. Well, five days before June 1st. . . .

" 'Q. During that five days you are talking about before June 1st and on May 31st and on June 1st was there any current of air at all into your room? A. No. sir. . . .

" 'Q. How many times did you leave that place on account of those facts and those conditions? A. Well, I don't know exactly how many times I had to each day. . . . .

" 'Q. After working a while in there and then what would you do? A. I would go and lay down in the entry in the fresh air.

" 'Q. And why did you do that? A. Because I was sick and couldn't stand up hardly any more. . . .

" 'Q. Have you ever had any afflictions of the kind that you have described? A. No, sir.

" 'Q. Before this time? A. No, sir.'

"This was direct evidence showing that there was no current of air in plaintiff's working place and that plaintiff's sickness was caused by breathing bad air. The direct evidence shows that powder and dynamite were exploded in the mine, and there was opinion evidence to the effect that such explosives may generate carbon monoxide gas. The evidence of Dr. Benage shows that the injuries suffered by plaintiff were due to inhaling harmful quantities of carbon monoxide gas. This was direct evidence showing that the plaintiff's physical condition was not caused by drink or faulty bowel elimination. The only element in plaintiff's case which can be said to rest on inference is whether or not the explosions generated the carbon monoxide gas which plaintiff breathed. The fact that plaintiff, while in his room, inhaled gas in harmful quantities was proven by direct evidence. Whether such gas was generated by explosions or by some other force or agency was of no moment.

"It was unnecessary for plaintiff to show that the failure of defendant to obey the mining law of Kansas was willful. It was sufficient to show that such failure was due to the defendant's negligence. [Echord case, supra.]

"The defendant argues that it was not required to furnish plaintiff a reasonably safe place in which to work because the room was continually changing by reason of the work itself. In the case of Brooks v. Central Coal and Coke Company, 96 Kan. 530, the court said:

" 'The rule that an employer must furnish an employee a reasonably safe place in which to work does not apply where the employee furnishes his own place, or where the place is continually changing by reason of the work itself.'

"The rule of the Brooks case does not apply to the facts in the

instant case. The defendant, not the plaintiff, furnished the room in which the latter worked. Although the room was 'continually changing' due to the removal of coal, such change did not affect the ventilation of the mine. It was the failure of the defendant to properly ventilate the room, a matter over which plaintiff had no control, which permitted harmful gas to linger in plaintiff's working place.

"Plaintiff's Instruction A was as follows:

" 'The court instructs the jury if you believe from the evidence that on the days in question and about June 1, 1933, plaintiff was in the employ of defendant and working for it in the room in question off the sixth east entry as a coal miner in its said underground coal mine in Kansas, then you are further instructed that the statute laws of said state make it the legal duty of the operator of a coal mine to provide and maintain airways of sufficient dimensions to supply the requisite amount of air to carry away or dilute and render harmless any noxious gases which may accumulate in the working place of such mine, and to provide and maintain ample means of ventilation and providing an adequate supply of good air to every person working in such mine, and if you believe from the evidence that defendant on said days failed to perform the aforesaid legal duties and as respects the matter of ventilation and alleged harmful gas and the air in said room defendant failed to use ordinary care to provide and maintain a reasonably safe place for plaintiff to work and perform his duties in said room, if you so find, and that as a direct result thereof while plaintiff was so working in said room on said days there were dangerous and harmful quantities of noxious gas and impure air in said room, if you so find, and that on said days and from day to day plaintiff breathed and inhaled dangerous and harmful quantities of noxious gas and impure and bad air while working in said room, if you so find, and that such exposures and inhalations and the injurious effects, if any, therefrom were from day to day and on several different days, if you so find, and that he was thereby gradually and from day to day impregnated with poison, if so, and his system was thereby periodically and gradually and increasingly weakened and poisoned, if so, and that as a direct result of said continued and repeated exposures and inhalations, if any, he was injured and made ill, if you so find, and that his injuries, if any, were not the result of any accident, if you so find, then your verdict must be for plaintiff Oscar Knaup and against defendant.'

"The defendant contends the instruction submitted a question of law, allowed a verdict for the plaintiff upon the jury finding that the defendant failed to perform its legal duty under the law of Kansas without requiring a finding of facts which would constitute

a failure to comply with the Kansas law; does not require a finding of facts necessary to constitute a failure on the part of defendant to exercise due care to furnish plaintiff a reasonably safe place in which to work; allowed 'the jury to speculate as to what would be a violation of said law and tended to broaden the issues made by the pleadings and evidence;' and does not submit the specific negligence alleged in the petition.

"The instruction told the jury that it was the duty of the defendant to provide and maintain proper ventilation in its mine, and then said that if the defendant failed to exercise ordinary care to perform that duty and that as a 'direct result thereof' noxious and harmful gas was present in plaintiff's room, that he inhaled the same from day to day and was thereby injured then he was entitled to a verdict. Thus it is plain that the instruction does not submit a question of law nor allow the jury to speculate concerning the acts or omission which would be a violation of the law of Kansas.

"The defendant contends that the instruction does not submit the specific negligence alleged in the petition. The petition alleged that defendant negligently failed to use ordinary care to furnish plaintiff a reasonably safe place in which to work, in that his working place 'were insufficiently ventilated, were laden with foul air, dangerous, poisonous, noxious and harmful fumes and gases which were sufficient to and did poison and injure plaintiff and all parts of his body, and he alleges that all of the dangerous facts and conditions herein set forth and complained of existed at and prior to his inhalation thereof and his injuries therefrom and long enough prior thereto that defendant knew or by the use of due care would have known thereof in time to have remedied and removed said dangers. . . .' The instruction is in the conjunctive, does not warrant a verdict for the plaintiff unless the jury found that the defendant failed to exercise ordinary care to provide and maintain a reasonably safe place in which plaintiff could perform the duties of his employment; that as a direct result of such failure noxious gas existed in plaintiff's room, and that he inhaled such gas from day to day, and was thereby injured. Evidently the specific negligence pleaded was submitted in the instruction.

"The defendant further contends that the instruction does not require a finding that inhaling carbon monoxide gas caused plaintiff to be injured and, therefore, the instruction was broader than the evidence. The instruction submitted the question as to whether or not the injuries were caused by inhaling 'noxious gas' but does not require a finding that such noxious gas was carbon monoxide gas. The instruction therefore was broader than the evidence. In

determining this appeal we must disregard any error 'which shall not affect the substantial rights' of the defendant. [Sec. 821, R. S. 1929.]

"The verdict shows that the jury found that plaintiff was injured and that such injuries were caused by inhaling noxious gas. The only evidence tending to show the cause of such injuries was that the inhalations of carbon monoxide gas from day to day *was the cause*. Throughout the trial there was not a hint or suggestion that plaintiff claimed that his injuries were caused by breathing a gas other than carbon monoxide gas. Manifestly in these circumstances no qualified juror would join in a verdict for the plaintiff unless he found that the words 'noxious gas,' as used in the instruction, meant carbon monoxide gas. The substantial rights of the defendant were not affected by the use of the words 'noxious gas,' instead of the phrase 'carbon monoxide gas.'

"The foregoing disposes of all of the questions presented on this appeal. The judgment is affirmed."

After the cause was certified here, defendant filed a new brief raising questions which were not presented to the Court of Appeals for decision.

One of the new questions presented is the alleged error of the court in the admission of evidence.

Over the objection of defendant, plaintiff was permitted to show by medical testimony that there are dormant tubercular germs in every human body; that such germs do not become active unless some reason exists for an attack; that the condition of plaintiff's lungs, produced by inhaling carbon monoxide gas, furnished a fertile field for such an attack; that tuberculosis in its incipient stage may become lighted up, stirred into action and become active within a month; that plaintiff had incipient tuberculosis in July, 1933.

The petition does not allege that plaintiff had tuberculosis, or that he developed tuberculosis as a result of his injuries.

Plaintiff contends that much of the evidence in question was introduced without objection. We do not agree with this contention. The record shows:

"Q. Let's see if I understood that, doctor, because I want to make this plain, if I can, as we go along. When you speak of a germ or a condition lying dormant, is it or is it not a fact that every man has germs in the human body?

"MR. KEATING: I object to that question as being without the issues in this case, nothing at all in the petition about any dormant germs.

"THE COURT: Overruled.

"Q. (MR. POPHAM) I say is it a fact that there are germs in

every human body of every kind? A. That is right. That is the consensus of opinion.

"Q. And are there tubercular germs in every human body at all times? A. That is the consensus of opinion, that practically all of us carry them.

"Q. And that is a fact well proven by medical science, is it not doctor? A. I think so, yes.

"Q. Now, if the lung tissues are inflamed and an inflammatory process or condition such as been described is set up what is the tendency of these germs to get busy?

"MR. KEATING: Same objection, if the court please to this entire line of testimony, and I won't have to repeat the objection each time.

"THE COURT: That will be the understanding.

"MR. POPHAMS Yes.

"THE COURT: Overruled.

"A. The natural reaction of any damaged or any bruised or any injured tissue of our body, regardless of whether it is nerves, muscles or body tissue, when you injure it you lower its resistence and it is more susceptible than had it not been injured. That is very true with anything, any sort of disease."

The line of testimony to which objection was made was evidence to the effect that plaintiff's injuries had a tendency to develop the dormant tubercular germs in his body and cause them to become active. The obvious ground of the objection was, "that issue was not pleaded."

Plaintiff contends that the agreement between court and counsel to the effect that defendant need not repeat this objection each time, applied only to the witness being then examined, and since the same facts were proved by other witnesses without objection, plaintiff waived its right to complain of the admission of such testimony. We do not so understand the agreement. But independent of the agreement, where, as here, objection is made and acted upon, and a ruling thereon saved, it is unnecessary to repeat the objection to the same character of testimony offered by another witness. In Schierbaum v. Schemme, 157 Mo. 1, 57 S. W. 526, we said:

"Where a party has seasonably objected to evidence of a certain character by one witness and his objection is overruled, he is not required or expected to repeat his objection when testimony of the same kind by another witness is offered; indeed proper decorum would indicate that he should not do so."

For the reasons stated, defendant's objection to the evidence offered by plaintiff relative to the disease of tuberculosis was properly preserved for review.

There was no showing that tuberculosis was a necessary result of an injury such as plaintiff received. The evidence was that conditions produced by such injuries furnished a fertile field for the development of dormant tuberculosis germs, and rendered the person receiving such an injury more susceptible to the disease. Otherwise stated, tuberculosis may or may not develop from such an injury. In this situation, if plaintiff developed tuberculosis as a result of his injuries, and intended to claim damages on that account, defendant was entitled to know that fact, and it should have been alleged in the petition. Had the petition so alleged, defendant would then have had time and opportunity to investigate the truth of such claim and prepare to meet it. On the other hand, if tuberculosis were a necessary and inevitable result of such an injury as plaintiff received, defendant would be presumed to have known that fact, and would have had opportunity to prepare to meet that issue, although it was not alleged in the petition. The settled rule governing such a situation is stated by this court in Hall v. Manufacturers Coal & Coke Co., 260 Mo. 351, 373, 168 S. W. 927, as follows:

" 'It is a well known fact that from certain kinds of physical injuries, certain results will thereafter inevitably follow. In other words, that such injuries will naturally produce certain conditions and diseases. In such case an allegation in the petition of the injury inflicted would justify proof of such conditions and diseases as would of necessity follow the injury and as to such conditions and diseases the defendant must come prepared to defend. But, on the other hand, there are other physical injuries which may or may not produce resulting conditions or diseases. For instance, an injury to the lung might superinduce pneumonia, but not necessarily so. An injury to the nervous system might produce blindness, but not necessarily so. These conditions or diseases last mentioned may as readily come from other causes as from the physical injury or injuries. In such case the petition should be specific, to the end that the defendant could come prepared to meet the issues and show that the condition or disease was not caused by the physical injury. This he cannot do if the unpleaded conditions or diseases are sprung upon him for the first time at the trial." '

It was improper and prejudicial to admit, over the objection of defendant, the evidence in question relating to the disease of tuberculosis, because the allegations of the petition did not present that issue for determination. Since the case must be reversed for the error in the admission of this evidence, it is not necessary to determine other contentions made, (a) that the verdict is excessive, and (b) that the giving of plaintiff's Instruction B was not authorized by the evidence.

Because of error in the admission of evidence, the judgment should be reversed and cause remanded. It is so ordered. All concur, except *Douglas, J.,* absent.