WILBERT CLIFFORD v. N. B. PITCAIRN and FRANK C. NICODEMUS, Receivers of Wabash Railway Company, a Corporation, Appellants.—131 S. W. (2d) 508.

Division Two, September 12, 1939.

*Homer Hall* and *Sebree, Sebree & Shook* for appellants.

62

*Trusty, Pugh & Trusty* and *Hogsett, Murray, Trippe, Depping & Houts* for respondent.

64

WESTHUES, C.—Respondent Clifford, plaintiff below, obtained a judgment against appellants, receivers of the Wabash Railway Company, in the sum of $27,500, for personal injuries alleged to have been sustained when a train of the Wabash collided with a train of the Chicago and Alton in the yards at Mexico, Missouri. The case was submitted to a jury solely under the humanitarian doctrine. Appellant duly perfected an appeal from the judgment entered.

The main line of the Wabash and that of the Alton pass through Mexico, Missouri, in easterly and westerly directions. The Wabash tracks are immediately to the south of the Alton tracks. Both roads have the usual side tracks found in the railroad yards in cities the size of Mexico. Between the tracks of these roads is located what is called a transfer track to which both roads have access by means of lead tracks which begin at a point west of the transfer track and run in an easterly direction until they merge into the transfer track. Both roads use the same switch in getting to and from the transfer track, and it is customary to leave the switch set as when last in use. When the switch is open for the Alton a red light is to the west. The transfer track is utilized in transferring cars from one road to the other. For example: If the Wabash has a car destined for a point on the Alton road it places the car on the transfer track and an Alton crew takes it from this transfer track and transfers it to the

Alton, and vice versa when the Alton road has a car destined for a point on the Wabash. The collision which gave rise to this lawsuit occurred on the night of November 7, 1933, at about 1:00 A. M. A crew on a westbound Alton freight train had orders to pick up four cars on the transfer track and take them to points west of Mexico. The crew cut the freight train at a point twenty-four cars from the engine and made a switching movement to the transfer track for the purpose of getting the four cars desired. They found a car they did not want in front of the four cars to be taken, so it became necessary to take this car away with the four cars and then replace it after the four cars were placed in the Alton train. This first switching movement was completed and the train crew began the movement to replace the fifth car, the one not wanted, on the transfer track. The twenty-four cars were moved westward so that the car for the transfer track passed a switch west of the lead track which led to the transfer track, then the train was moved backwards and east toward the transfer track. Plaintiff Clifford, conductor of the Alton train, climbed on the easterly car of the train for the purpose of setting the brakes to stop the car at the point desired on the transfer track. A Wabash crew was doing some switching work in the yards at Mexico at this same time. It too had occasion to go to the transfer track. The Wabash crew, with an engine, a gondola car loaded with clay in the lead and a caboose to the rear of the engine, passed onto the lead track of the Wabash and moved toward the transfer track. This Wabash gondola car and the easterly car of the Alton train, on which plaintiff was riding, collided near the switch of the transfer track. Plaintiff was thrown to the tracks and severely injured. The switch for the transfer track was set for the Alton. There was evidence that the Wabash train had come to a stop and was waiting for the purpose of having a member of its crew throw the switch so that it could enter the transfer track. One witness testified the Wabash train was standing still thirty seconds before the collision. Other witnesses testified the Wabash train was never brought to a stop prior to the collision. And still others stated that the Wabash had just come to a stop or was moving slowly.

Appellants briefed a number of points seeking a reversal of the judgment. One assignment of error concerns plaintiff's main instruction. This instruction submitted the case to the jury under the humanitarian doctrine. It concluded as follows:

" 'If you further find from the evidence that the defendants, receivers of the Wabash, failed to use such ordinary care in the respects outlined above, then you are instructed that the receivers of the Wabash were guilty of negligence; and if you further find from the evidence that such negligence of said defendants either directly caused said collision and injuries to the plaintiff, or directly concurred

or directly combined with any other cause, or any act or omission on the part of anyone else, in directly bringing about the collision and plaintiff's injuries, then, in either of such events, it would be your duty to render a verdict for the plaintiff, Mr. Clifford, and against the defendants, receivers of the Wabash Railway Company; and this would be true regardless of whether the Wabash lead car was moving or stopped at the time of the collision, and regardless of which car hit the other, and regardless of any acts or conduct, if there were any, Mr. Clifford.' ''

There was evidence which justified a finding that the crew of the Wabash was guilty of negligence and also that at least some member of the crew of the Alton was guilty of negligence. That there was a collision between the two trains and an injury to plaintiff as a result thereof was conceded. Suppose, however, that the Wabash train had been brought to a stop and had been waiting for a member of its crew to throw the switch, and while thus stopped the Alton train had backed into it, would that have justified a verdict for plaintiff under the humanitarian doctrine? We think not, even if the Wabash crew had been negligent in stopping its train so close to the switch as not to leave sufficient room for an Alton train to pass in safety. The instruction, however, authorized a verdict for plaintiff under such circumstances. It is therefore erroneous. The instruction emphatically informed the jury that if the Wabash crew was negligent, and if that negligence contributed to cause plaintiff's injuries, then plaintiff was entitled to a verdict, even though the Wabash train was stopped at the time of the collision and regardless of which car struck the other. We are of the opinion that it was primary negligence if the Wabash crew was negligent in stopping its train so close to the transfer switch as not to leave room for the Alton train to pass. Certainly plaintiff would not be entitled to a verdict under the humanitarian doctrine if the Wabash crew had brought its train to a stop and was waiting for the switch to be changed in its favor, and then the Alton train had backed into it. Yet the instruction authorizes a verdict if the collision occurred in that manner. An essential element of the humanitarian doctrine is: That the plaintiff must have been in a position of imminent peril, and that the defendant saw or could have seen plaintiff in such peril in time *thereafter* to have averted inflicting injury. [Massman v. Kansas City Public Service Co., 119 S. W. (2d) 833, l. c. 836, (2); Ziegelmeier v. East St. Louis & Sub. Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027, l. c. 1029 (1-3); Lotta v. Kansas City Pub. Serv. Co., 342 Mo. 743, 117 S. W. (2d) 296, l. c. 300 (4-8); Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713; State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. (2d) 798, 800; State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014, l. c. 1018 (3-5); Mahl v. Terrell, 342 Mo. 15, 111 S. W. (2d) 160.]

Other points were briefed concerning plaintiff's main instruction. Some of the questions are debatable. If, in case of retrial, plaintiff desires to submit the case under the humanitarian doctrine, he is advised to redraft his instruction. Recent rulings of this court on the limits of the danger zone should be heeded. [Buehler v. Festus Mercantile Co., 119 S. W. (2d) 961, l. c. 970 (11, 12.]

■ Appellants insist that the evidence showed beyond doubt that plaintiff's negligence was the sole proximate cause of his injuries. To this we cannot agree. As above indicated, a jury might well have found that some member of both crews was negligent. If a jury found that plaintiff's negligence was the sole cause of his injuries then defendants would not be liable. Contributory negligence is not a defense under the humanitarian doctrine, while it would be against primary negligence. ■ Instructions on these various questions must be carefully worded. [See Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, l. c. 53 (8-11); McGrath v. Meyers, 341 Mo. 412, 107 S. W. (2d) 792, l. c. 794 (4-6); Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, l. c. 377 (11-13).] Respondent insists that appellants joined in his theory, as outlined in Instruction number 1, by offering Instruction number "V", given by the court. This instruction read as follows:

"The Court instructs the jury that the plaintiff is not entitled to recover unless he has proved to your satisfaction by the preponderance of the evidence that the crew of the Wabash train knew or by the exercise of ordinary care would have known that the car on which plaintiff was riding was approaching the point of collision, in time thereafter to have stopped the Wabash train while it was in the clear of the Alton lead track, if you believe from the evidence that the Wabash train was moving at said time and place, and unless the plaintiff has so proved your verdict must be for the defendant."

As we read the instruction, it conflicts with plaintiff's instruction on the very point wherein we held plaintiff's instruction erroneous. Instruction "V" required the jury to find that the crew of the Wabash knew or by the exercise of ordinary care could have known, that the car on which plaintiff was riding was approaching the point of collision, *in time thereafter* to have stopped the Wabash train. Instruction "V" conflicted with Instruction 1 given for plaintiff. They were inconsistent and defendants' instruction did not cure the error.

Other points briefed pertaining to the trial need not be considered, as the same questions are not likely to be presented in case of retrial. The verdict is claimed to be grossly excessive. It is unnecessary to discuss that question since the case must be remanded. For the error indicated the judgment is reversed and the cause remanded. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.