John VANNEMAN, a Minor, by His Father
and Next Friend, Ralph F. Vanneman,
Appellant,

v.

W. T. GRANT COMPANY, a Corporation,
Respondent.

No. 48025.

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Rehearing Denied Dec. 11, 1961.

Louis A. Silks, Jr., John R. Monaghan,
Silks, Silks & Curtis, Kansas City, for appellant.

Rodger J. Walsh, Kansas City, for respondent. Davis, Thomson, VanDyke, Fairchild & Walsh, Kansas City, of counsel.

WESTHUES, Presiding Judge.

Plaintiff John Vanneman, a minor, by his father and next friend, Ralph F. Vanneman, filed this suit against the defendant W. T. Grant Company, a corporation, wherein he sought $5,000 actual and $5,000 punitive damages. Plaintiff alleged in his petition that while in defendant's place of business he was willfully assaulted, unlawfully detained, and slandered without just cause.

The case was tried in the Circuit Court of Jackson County, Missouri, where the jury found the issues in favor of defendant and plaintiff appealed from the judgment entered pursuant to the verdict. After

motion for new trial was overruled, a notice of appeal was filed in this court on December 23, 1959, which was before our appellate jurisdiction was raised to $15,000.

The occurrence out of which this case arose happened in defendant's storeroom in Mission, Kansas. Plaintiff, a fourteen-year-old student in the tenth grade, and a school companion went to defendant's store on February 17, 1958, at about four o'clock in the afternoon. Plaintiff desired to purchase a watch band. After they entered the store, the boys separated. Plaintiff went to look for a watch band while his companion went to a counter where records were on display and where a record player was available. Plaintiff was unable to find the location where the watch bands were kept for sale and joined his companion at the record counter. After playing a record, they left that counter and approached the man in charge, a Mr. Ripley, and inquired about a watch band. Ripley and the boys went to the place where the bands were on display and after looking at a number of them, plaintiff stated that none of the bands was the kind he wished to buy. The boys then started to leave the store. Plaintiff was wearing a short jacket which, when zipped, bulged somewhat at the chest. After the boys had taken a few steps, Mr. Ripley said to them, "Just a minute, boys," or words to that effect. The boys stopped, whereupon Mr. Ripley examined plaintiff's jacket. He testified that he thought the boy might have hidden a record under the jacket. No record was found. Ripley apologized to plaintiff and stated, "We have had quite a bit of shop-lifting in the store, I naturally had my eyes open." The boys then left the store. Plaintiff informed his father of what had occurred. The father went to the store and had a conversation with Ripley. Later this suit was filed. The above account is substantially what occurred. There was some difference in the evidence as to just what was said at the time by Mr. Ripley to plaintiff. However, all agreed that the boys were detained for not more than two minutes; further,

that no harsh words were spoken and that the assault consisted of Mr. Ripley's pushing on plaintiff's jacket to determine if it contained a record.

On this appeal, in plaintiff's brief, it is stated that the trial court erred in giving, at defendant's request, instructions No. 2 and No. 3; further, that the trial court erred in not discharging the jury when defendant's counsel made statements before the jury to prejudice plaintiff and his witness. In the last assignment, plaintiff says the trial court erred in not admitting evidence showing what the hearer understood by the defendant's alleged slanderous words.

Instruction No. 3, complained of, reads as follows: "The Court instructs the jury that if you find and believe, that at the time mentioned in evidence, that the defendant's agent, servant and employee did not deprive the plaintiff of his freedom of movement, if so, or restrain his liberty, if so, or did not with malice assault plaintiff, if so, or did not put him in fear for his safety and physical well being, if so, or did not slander plaintiff, if so, then your verdict must be for defendant."

This instruction in the disjunctive informed the jury that the verdict must be for the defendant if the jury found against plaintiff on any one or more of the elements mentioned in the instruction. In other words, the jury was told that even though plaintiff may have been deprived of his freedom, restrained of his liberty, assaulted, put in fear for his safety, and slandered, yet, if defendant's agent "did not with malice assault plaintiff, * * * then your verdict must be for defendant." We find no theory on which this instruction may be justified. The element of malice is, of course, important on the question of punitive damages. 35 C.J.S. False Imprisonment § 67, p. 776. Plaintiff, however, sought actual as well as punitive damages and the case was so submitted. The absence of malice is not a defense to actual or compensatory damages. 35 C.J.S. False Imprisonment § 64, p. 770; Comer v. Knowles,

17 Kan. 436, cited with approval in Perry v. S. H. Kress & Co., 187 Kan. 537, 1. c. 540, 358 P.2d 665.

■ In point three, plaintiff says the trial court should have declared a mistrial because the attorney for the defendant made statements concerning plaintiff's father when the father was on the witness stand. In the argument of the brief, plaintiff complains of the following statement made by defendant's counsel in open court: "Mr. Walsh: The witness testified from the stand he has always had this boy with him, he has a high degree of care for the boy, he has not even paid for the child, support of this boy and had to be garnisheed. After he brought it out I have a right to impeach his testimony on that point." When the father was on the witness stand, the following occurred while plaintiff's counsel was examining the witness:

"Q. John is your grown son? A. Yes.

"Q. You have three daughters? A. Three daughters.

"Q. Two of whom now live with your former wife and the other is in a convent? A. That is correct.

"Q. Could you just tell the jury and the Court in your own words how you raised your son John? Mr. Walsh: I object to that, it wouldn't have any bearing on this case.

"Mr. Silks: If your Honor please, one of the elements—

"The Court: I will sustain that for the reason he could go on and on and tell how he raised his son. Ask him some questions.

"Q. (By Mr. Silks) Are you close to your son John? A. Very close.

"Q. Do you do things together? A. Everything.

"Q. Such as? A. We hunt, fish, all sports, baseball, football games, we go to or he participated in.

"Q. Has that been true since he was a small lad? A. Since he was a little boy."

By that evidence, plaintiff, whose purpose could have been only to impress the jury, placed in issue the father's attitude toward the son. The evidence with reference to the mother and plaintiff's sisters had no bearing on any issue in the case. Defendant had the right to refute the evidence regarding the father since he (the father) testified as to the relationship between him and plaintiff. Plaintiff, by offering evidence concerning the good things about the family, cannot now complain because the opposing party offered evidence to the contrary. The sour must be taken with the sweet. On a retrial, the evidence should be confined to the life of plaintiff. He is the person directly concerned. Evidence relative to the lives of the other members of the family should not be introduced.

■ Plaintiff based an assignment of error on a ruling of the court which excluded evidence as to what the witness, then being examined, understood the words spoken by Ripley to mean. The statements attributed to Ripley were in our opinion ambiguous. The evidence should have been admitted. See 53 C.J.S. Libel and Slander § 201b, p. 311; Frank v. Herring, 240 Mo. App. 425, 208 S.W.2d 783, 1. c. 788(2). Defendant, to justify the ruling of the trial court, says, among other reasons in the brief, that the question asked was leading and suggestive. We need not decide whether that contention is correct because the case must be remanded for the error in instruction No. 3. On a retrial, similar evidence may be offered and we therefore ruled the question of admissibility of such evidence.

■ Instruction No. 2, given at defendant's request, of which plaintiff complains, covered the defense of justifiable detention on the theory that there was probable cause for Ripley's actions. This subject was considered at length by this court in the case of Teel v. May Department Stores Co.,

348 Mo. 696, 155 S.W.2d 74, 1. c. 77, 78 (1-3), 137 A.L.R. 495. What was said in that case should be a sufficient guide on a retrial of this case. It may be noted that justification for the detention of a person based on reasonable cause may be pleaded and by instruction submitted to a jury provided there is evidence to justify such submission.

For the reasons above indicated, the judgment of the trial court is reversed and the cause remanded. It is so ordered.

All concur.