**Gertrude EDDINGS, Appellant,**

v.

**Henry J. KELLER, Administrator of the Estate of George David Porter, et al., Defendants,**

**Willie B. Osbon, and Watkins Motor Lines, Inc., Respondents.**

**No. 51019.**

Supreme Court of Missouri, Division No. 2.

Jan. 10, 1966.

*Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 14, 1966.*

Further Motion for Rehearing or to Transfer to Court En Banc Denied March 14, 1966.

Joe C. Greene, David W. Bernhardt, Bussell, Hough & Greene, Springfield, for appellant.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for respondents.

STOCKARD, Commissioner.

Plaintiff has appealed from the judgment entered pursuant to unanimous jury verdict in favor of defendants in her suit for wrongful death of Henry Eddings, her husband, in which she sought damages in the amount of $24,200.

The collision which gave rise to this lawsuit occurred about one o'clock of the morning of May 25, 1963, on a bridge over the James River on Highway 60 a few miles southeast of Springfield, Missouri. An automobile traveling south on Highway 60 and operated by David Porter struck the rear of another automobile operated by John Hulston, and the Porter vehicle then veered across the highway into a head-on collision with a tractor-trailer operated by William Colburn. The tractor-trailer overturned, and it came to rest near the north end of the bridge lying on its side and blocking part of the highway. Shortly thereafter Henry Eddings drove his automobile south on Highway 60, and it collided with the overturned tractor-trailer. Following this a Ford, the operator being unidentified, was driven northward through the wreckage and was parked just north of the bridge on the east shoulder. The headlights on this automobile remained on. It was after the occurrence of all these events that defendant Willie Osbon drove his tractor-trailer south on the highway toward the bridge and collided with the Eddings automobile.

Prior to trial plaintiff abandoned certain allegations of primary negligence of Osbon, and her case was submitted to the jury on his humanitarian negligence in failing to stop. Plaintiff submitted that "Henry R. Eddings was in a position of imminent peril of being struck and injured as a result of a collision" between the truck operated by Osbon and the Eddings automobile, and then submitted that "Osbon saw, or by the exercise of the highest degree of care, could have seen the vehicle in which the decedent was situated in the aforesaid position of imminent peril, * * * in time thereafter, by the exercise of the highest degree of care and by the use of the appliances on said truck and with reasonable safety to himself and all persons thereat," to have stopped the truck and avoided the collision.

Plaintiff challenges Instruction 10 which provided that if the jury found that Osbon was driving his tractor-trailer unit southward on Highway 60 toward the James River bridge and was "exercising the highest degree of care and was not negligent, as defined and submitted to you in other instructions," and if the jury further found "that the bright headlights of an automobile stopped on the east shoulder of U.S. Highway 60 and headed in a northerly direction, if so, obstructed defendant Osbon's view of the decedent, Henry Eddings, and his automobile on the James River bridge, so that defendant Osbon did not see, and by the exercise of the highest degree of care on his part could not have seen, Henry Eddings in a position of imminent peril of being struck by said tractor-trailer unit in time for the defendant Osbon thereafter, by the exercise of the highest degree of care, to have stopped said tractor-trailer unit, so as to have prevented the collision between the same and the automobile driven by said Henry Eddings, then plaintiff is not entitled to recover, and you will find your verdict in favor of the defendants."

Plaintiff asserts this instruction is "a positive misdirection of law and was prej-

udicially erroneous" because "it exonerated [Osbon] of any duty to discover the reasonable appearances of the position of peril," in that it "directed the jury that they must find for [defendants] unless they believed he [Osbon] could have seen the decedent Henry Eddings."

■ Instruction 10 is a converse instruction. It submits a factual situation supported by the evidence, "the existence of which would disprove, that is controvert, one or more of the essential factual elements of plaintiff's case." Liebow v. Jones Store Company, Mo., 303 S.W.2d 660, 662. The instruction apparently was taken from Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W. 2d 461, and except for the necessary changes to express the different factual situation it follows the converse instruction approved in that humanitarian negligence case.

Plaintiff cites numerous cases (See v. Wabash R. Co., 362 Mo. 489, 242 S.W.2d 15; Knorp v. Thompson, 352 Mo. 44, 175 S. W.2d 889; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, and many others) which state in effect that it is the reasonable appearances of the situation which imposes a duty on the defendant in a humanitarian situation to take preventative action, and of course we do not disagree with that general proposition. Plaintiff's argument seems to be that Instruction 10 exonerated Osbon of any duty to discover "reasonable appearances of the position of peril" because, as plaintiff contends, it "directed the jury that they must find for the [defendants] unless they believed he [Osbon] could have seen the decedent Henry Eddings." We do not agree that this is what the instruction did, and we are of the opinion that instead of accomplishing what plaintiff contends, the instruction was more restrictive than it needed to be.

In her verdict directing instruction, plaintiff submitted that "Henry R. Eddings was in a position of imminent peril," and that Osbon saw or could have seen "the *vehicle* in which the decedent was situated in the aforesaid position of imminent peril." In

Instruction 10 defendants submitted that bright headlights of another automobile obstructed Osbon's view "of the decedent, Henry Eddings, and his automobile * * so that [he] did not see and * * * could not have seen *Henry Eddings* in a position of imminent peril." Apparently plaintiff contends that the submission in Instruction 10 should have been that the bright headlights obstructed Osbon's view so that he did not see and could not have seen *the vehicle in which Henry Eddings was situated* in a position of imminent peril.

■ We do not rule in this case whether it was proper for plaintiff to submit in her verdict directing instruction that Osbon saw or should have seen the *vehicle* in which Henry Eddings was situated. Suffice it to say that the generally used statement in verdict directing instructions for the plaintiff in humanitarian cases is that the defendant saw or should have seen the *plaintiff* in a position of imminent peril. See Clifford v. Pitcairn, 345 Mo. 60, 131 S.W. 2d 508; Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483; White v. Kansas City Public Service Co., 239 Mo. App. 571, 193 S.W.2d 60;

Missouri Civil Instructions (Mo Bar CLE) § 13.6, p. 191. However, we do not think any jury composed of reasonably intelligent persons would have been misled by these two instructions, and that is the ultimate test. Spritz v. St. Louis Public Service Company, Mo., 341 S.W.2d 790; Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479. Plaintiff's instruction authorized a verdict for her if the jury found that *Henry Eddings* was in a position of imminent peril and if Osbon saw or should have seen the vehicle in which he was situated in the position of imminent peril. Instruction 10 authorized a verdict for defendant if the jury found as a fact that the bright lights of the Ford so obstructed Osbon's view of Henry Eddings *and his automobile* that Osbon did not and could not have seen Henry Eddings in the position of imminent peril referred to in plaintiff's instruction. Henry Eddings and his automobile were equated

in each instruction, and Instruction 10 was not a misdirection. It was plaintiff who deviated from the usual and customary submission, and if she was of the opinion that defendant's instruction, when in the usual form, would have been confusing to the jury in view of her submission, she should have called the matter to the attention of the court when there yet was time to correct it.

Appellant relies on Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563. There a passenger in an automobile, whose host driver had run a stop sign, brought suit based on humanitarian negligence against the operator and owner of the truck which struck the automobile. A new trial was granted, after a jury verdict for defendant, because an instruction given at defendants' request told the jury that it could not find for plaintiff "unless the plaintiff has shown * * * that the [operator of the truck] saw, or by the exercise of the highest degree of care could have seen the occupants of the Teague car in a place of imminent, immediate and inescapable peril, * * *." This is not what was provided in Instruction 10 in this case. In the opinion in the Teague case it was pointed out that for plaintiff to recover under the facts of that case on the theory of "inescapable peril," it was necessary that plaintiff, who was a passenger in the Teague automobile, be in a position of imminent peril because of the actual obliviousness of the host driver, and it was stated that "it made no difference whether he [the truck driver] saw or could have seen any occupants of the car." The Teague case is in no way in conflict with the result we have reached, and the rule there applied is not applicable here. We find nothing erroneous in Instruction 10 which was prejudicial to plaintiff.

Plaintiff asserts error resulted from certain comments made in the opening statement and in oral argument to the jury pertaining to negligence of Henry Eddings and of third parties. A statement of some basic principles pertaining to the humanitarian doctrine is appropriate.

■ In a humanitarian case it is only when a position of imminent peril has arisen that the doctrine comes into play and seizes upon the then existing situation, in effect *"blotting out primary or antecedent negligence."* Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930, and imposes a duty *thereafter* to exercise the required degree of care to avoid the threatened injury. Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, 673; Wilson v. Toliver, Mo., 305 S.W.2d 423, 429. "Whatever transpires from the standpoint of either plaintiff or defendant prior to the time that plaintiff enters into a position of imminent peril does not affect the rights of the parties thereafter." Yarrington v. Lininger, Mo., 327 S.W.2d 104, 108. The circumstances of how and why the collisions previous to that between the Osbon truck and the Eddings automobile occurred, and why the Eddings automobile with Henry Eddings in it came into collision with the Colburn truck and thereafter stopped on the highway, were all irrelevant to the issues in a humanitarian case by plaintiff against defendants based on Osbon's failure to stop. Notwithstanding this, in her opening statement to the jury plaintiff gave a detailed description of the collision between the Hulston and Porter automobiles, of the head-on collision between the Porter automobile and the Colburn truck, and of the collision between the Eddings automobile and the Colburn truck. She also described the course of travel of the Ford, with the unknown driver, through the wreckage to its stopped position on the east shoulder of the road immediately north of the bridge. Plaintiff then presented evidence to show the above circumstances. She read portions of a deposition of John Hulston in which he testified to the details of the collision between his automobile and that of Porter, and of the collision between the Porter automobile and the Colburn truck. In addition, by this deposition plaintiff developed the details of Hulston's activities during the entire evening prior to

the collisions, that is, that he had taken a "date" to the Shrine Mosque, the time he took his "date" home, the names of friends he met thereafter, the route he took out of Springfield to Highway 60, and where he was going when he became involved in the collisions. Plaintiff also showed the condition of and the equipment on the Hulston automobile, the speed he was traveling, his estimate of the speed of the Colburn truck, the traffic conditions on the highway, and the fact that he did not know Porter. Finally, plaintiff read into evidence the following question asked of Hulston: "Did you notice beer bottles in [the Porter car]?" and his answer, "Not at that time, I noticed them later." Plaintiff also read into evidence the question asked Hulston on cross-examination as to whether he "had anything of an intoxicating nature to drink that evening," and his answer that he had not. In addition, plaintiff read to the jury portions of a deposition by Colburn in which he described in detail the circumstances of the collision of the Eddings automobile with his truck. In her opening argument to the jury at the end of the case, plaintiff reviewed the evidence concerning the occurrence of these various collisions. With this background of the presentation of plaintiff's case we will now examine the remaining assignments of error.

Plaintiff asserts error resulted when the trial court overruled her objections to a comment of defendants' counsel in his opening statement which, plaintiff says, "injected * * * negligence of third parties." The statement was as follows: "The evidence will further show that after the accident, certain people, deputy sheriffs and so forth, went up to the Porter car and smelled a very strong odor of alcohol." Plaintiff objected on the ground "the antecedent accident occurrences of that first set of collisions are not relevant, not properly within the pleadings * * *."

█ We agree that the "antecedent accident occurrences of that first set of collisions" were not relevant to the issue of

humanitarian negligence on the part of Osbon in failing to stop. But the fact of their occurrence was pleaded in the petition, and in her opening statement plaintiff had just advised the jury that her evidence would show the details of all the collisions which occurred prior to the collision between defendants' truck and the Eddings automobile. The primary purpose of an opening statement is to inform the judge and the jury in a general way of the nature of the action so as to enable them to understand the case and to appreciate the significance of the evidence as it is presented. Hays v. Missouri Pacific Railroad Company, Mo., 304 S.W.2d 800, 804. When plaintiff advised the court and the jury that she was going to present evidence concerning these "antecedent accident occurrences" the trial court cannot be convicted of error in permitting defendants to tell the jury in their opening statement that their evidence would touch on the same issues.

█ Plaintiff also assigns as error several comments by counsel for defendants in oral argument to the jury on the basis that they injected antecedent negligence of Henry Eddings. We shall set out portions of the argument, and the parts italicized are those set forth in plaintiff's brief as constituting error.

"[Mr. Burkart]: *Now, Mr. Greene* [counsel for plaintiff] *has spent a great deal of time shouting at you about what Mr. Osbon could have seen, but bless your souls, there is one thing about this lawsuit that can't be avoided, and that is, Mr. Eddings didn't see it either.*

"Mr. Hough: [Counsel for plaintiff] Well, now, Your Honor, we will object to that as a definite comment on antecedent negligence.

"Mr. Burkart: I am not talking about negligence, I am talking about visibility, Your Honor.

"The Court: The objection is overruled.

"Mr. Burkart: I am talking about visibility, ladies and gentlemen of this jury. Oh, yes, they bring Mr. Craig in here who testifies to you that bright headlights don't blind you. Now you can get an expert to testify about nearly any thing."

There followed an argument concerning the headlights on the Ford parked on the east shoulder and north of the bridge, and concerning the testimony of Mr. Craig. There was also reference made to a comment in plaintiff's argument that Mr. Osbon was not accused of *deliberately driving his truck into the collision*. The following then occurred:

"Mr. Burkart: Henry Eddings had the same visibility that Mr. Osbon. It's true, he wasn't blinded by any headlights. All right, if you don't want to believe that car [the Ford on the east shoulder] was there, if you don't want to believe those headlights blinded Mr. Osbon, it's your duty to forget about it. It's your duty to put the Ford Fairlane out of the evidence in the case. That's what—if that is what you want to do, all right. *Let's just take it out of the case for the purpose of the argument, and we have Mr. Osbon coming down the bridge just like Mr. Eddings did.*

"Mr. Hough: Your Honor, this is a comment on antecedent negligence and a direct conflict with Instruction Number 5, or whatever number it is, that advised the jury that how he came to be here is not their concern.

"The Court: The objection is overruled.

"Mr. Burkart: *So, with the Ford Fairlane out of the picture, we've got Mr. Osbon coming down toward the scene of this accident just like Mr. Eddings did, and they said 'You should have seen this wreckage.'* Well do you think Mr. Eddings would have run into it if he had seen it? Now, talk about a

white grill on Mr. Colburn's unit. Mr. Colburn was dressed in blue denim; a brown hat on, blue denim, out in front of that truck. I expect Mr. Colburn obscured that grill to some extent. *But whether he did or not, they are accusing us of the same conduct, the visibility Mr. Eddings had, and* folks, if you bring in a recovery on that theory it isn't right."

In this case, whether Osbon saw or should have seen Mr. Eddings (or his vehicle) in a position of peril was the principal issue. Defendants would not have been entitled to present evidence that Henry Eddings drove southward to the bridge and collided with the Colburn truck while overturned and blocking a portion of the highway, but *plaintiff* introduced such evidence. We necessarily assume that she did so because she thought it would result in some advantage to her. A fair inference from plaintiff's evidence was that Mr. Eddings did not see or could not see the situation on the bridge in time thereafter to have avoided colliding with the overturned Colburn truck. "Counsel is allowed wide latitude in discussing the facts and arguing inferences from the evidence even though the inferences drawn are illogical or erroneous. * * * The trial court must necessarily be vested with a wide discretion in ruling on the propriety of jury arguments and in determining whether prejudice has resulted; the exercise of such discretion will not be disturbed unless it is clearly abused." Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802; Glore v. Bone, Mo., 324 S.W.2d 633; Harp v. Illinois Central Railroad Company, Mo., 370 S.W.2d 387. Counsel for defendants was entitled to comment on plaintiff's evidence as well as that of defendants, and to draw inferences therefrom. He made it plain that his remarks were directed to the issue of visibility, a proper subject for argument. In view of the contents of plaintiff's objection the court's ruling had the effect of advising the jury that this argument was for that purpose and not to be considered on the issue

of antecedent negligence. It was only in the fourth comment which plaintiff has isolated that counsel failed to adhere strictly to the issue of visibility by his reference to the "same conduct." However, when placed in context it clearly appears that counsel immediately corrected his statement to refer to "the visibility," and in any event there was no objection to this one isolated deviation. In view of the plaintiff's evidence, the trial court did not abuse its discretion in determining that the argument was within proper limits and in overruling the two objections made thereto.

■ Plaintiff's next contention is that the trial court erred in overruling her "objection to closing argument" of defendants "which interjected antecedent and contributory negligence of persons not parties to the suit in a case submitted solely on the humanitarian theory * * * with no sole cause submission against these third parties * * *." In the argument portion of her brief plaintiff sets out three isolated statements as constituting the argument of which she complains. No objection was made to two of them, and we shall set out and rule only as to the statement to which objection was made. See Stanziale v. Musick, Mo., 370 S.W.2d 261; O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904.

In the opening statement of plaintiff, counsel told the jury that plaintiff had settled her claims against the estate of David Porter and against William Colburn, stating the amounts received, and that she had dismissed her suit against them. In argument to the jury counsel again mentioned the amount received from others. As previously noted, plaintiff's evidence placed before the jury the details and circumstances of the collisions which occurred before the Osbon truck came upon the scene. In argument, defendants' counsel said this:

"Now, they say: 'Oh, no, don't talk about Mr. Colburn. Don't talk about Mr. Porter,' but the very first words out of Mr. Green's mouth when he got up to make his opening statement were, 'Oh, yes, we've settled with them.' Already within two minutes after he started his opening statement, he was making his excuses and his alibis. He was talking about token payments. *Ladies and gentlemen of this jury, I want to have their answer to this question: If Mr. Porter and Mr. Colburn didn't have anything to do with this accident, why did they take that money from them?"*

A general objection was made; that is, no reason was assigned, and the court stated that it did not "see anything objectionable about it." Plaintiff then stated that "he is interjecting all this antecedent negligence." The objection was overruled. The portion of the above argument to which plaintiff limits her objection on this appeal is that portion italicized.

The objection on this appeal is that the remark pertained to the negligence of persons not parties to the suit. Perhaps by a farfetched inference it may be said that it did; at least we will assume that it did, and of course in this humanitarian case that was not material to the issue of Osbon's humanitarian negligence. There are two reasons, however, why we consider this comment not to be prejudicial to plaintiff.

First, plaintiff apparently thought it was to her advantage to advise the jury orally that she had settled with Porter's estate and with Mr. Colburn, and to tell the jury the amounts of those settlements, although that was immaterial to the issue of liability in this case. In addition, she detailed in her evidence the circumstances of the collisions which led up to and brought about the position of imminent peril of Mr. Eddings, and in her argument to the jury she reviewed the circumstances of those prior collisions. All of this was immaterial to the issue of Osbon's humanitarian negligence in failing to stop. She then told the jury that "You must set aside in your mind, those things, and you must concentrate on what happened thereafter." It is evident by the opening

statement of defendant's counsel, as above set out, that he was replying to the previous argument of plaintiff, and we consider the comment to have been invited by plaintiff's reference to her settlements with the Porter's estate and Mr. Colburn, and her reference to the participation of Porter and Colburn in the antecedent circumstances.

Second, at the request of the plaintiff the court instructed the jury that if it found the facts as hypothesized in plaintiff's verdict directing instruction its verdict must be in favor of plaintiff, and the instruction continued, "this is the law and it is true under the above circumstances and conditions set forth, if you so find them, even though you should also find and believe from the evidence that some act or omission on the part of Henry R. Eddings or on the part of William Colburn or on the part of David Porter or on the part of all three such persons directly contributed to cause Henry R. Eddings to be in the aforesaid position of imminent peril, if you so find." In view of this instruction, which we cannot assume the jury disregarded, and plaintiff's method of trial as previously set out, we decline to consider this isolated and invited comment to constitute prejudicial error.

■ Plaintiff next asserts that the trial court erred in overruling her objection to the cross-examination of four witnesses "as to the existence of drinking and the alleged drunkenness and negligent driving of David Porter" because this cross-examination prejudicially injected the issue of antecedent, contributory negligence of a third party. Plaintiff sets forth in her brief the challenged testimony of each witness, but an objection was made only to that of Highway Patrolman Gary Whitener. She asserts that she was not required to continue her objections to the same line of questioning of plaintiff's witnesses to preserve the issue for appellate review, citing Knaup v. Western Coal & Mining Co., 342 Mo. 210, 114 S.W.2d 969. However, if the objection which was made was of no merit and was properly overruled it does not, in

any event, preserve for appellate review a challenge to subsequent testimony. Therefore, in ruling this contention, we need set forth and consider nothing more than the testimony of Trooper Whitener.

On direct examination Trooper Whitener described the scene, the location and the condition of the various vehicles when he arrived. He stated that there were skidmarks on the south side of the bridge from the impact of the Porter automobile with the Colburn truck. He was also asked about the location of debris, and stated that he did not recall any particular concentrations of it. On cross-examination he was asked if he went to the Porter automobile and made an inspection of it and if he found "anything with reference to alcohol," and he replied "yes, sir." When asked to tell what he found, counsel for plaintiff objected "to these antecedent acts at this time because the case, as it now stands, rests solely upon the humanitarian basis, and what happened or occurred in placing Mr. Eddings in a position of peril is not relevant to be considered by the jury, * * *." The trial court replied that "this is cross-examination of the witness and I think probably this is proper cross-examination," and overruled the objection. The Trooper then stated that he found a full bottle of beer in the car and one near the car, and also several broken bottles in the car.

Generally speaking, whether Porter had or had not been drinking was immaterial to the issue of Osbon's humanitarian negligence in failing to stop. However, as previously noted, plaintiff, in outlining her evidence in her opening statement to the jury, declared her intention to show the complete details of the collisions prior to the one involving defendants' truck. Trooper Whitener had testified on direct examination that he had investigated the collisions and he described in detail the location and condition of the various vehicles including the Porter automobile. This, of course, was proper to show the location of the vehicles from which the jury could determine the position of imminent peril. The question to Trooper

Whitener on cross-examination tested the thoroughness of his investigation and observation, and it pertained generally to a subject of his direct examination. We are of the opinion that the trial court cannot be held to have erred in making the ruling that it did. In any event, this incident was not prejudicial. Plaintiff subsequently developed fully, except the fact that Porter had beer in his automobile and had been drinking, the details of the collisions between the Porter and Hulston automobiles and between the Porter automobile and the Colburn truck, and even went into the details of where and how Hulston had spent the previous evening. As previously noted, plaintiff also read into evidence the question asked Hulston on his deposition as to whether he "had anything of an intoxicating nature to drink that evening," and also the statement of Hulston that he had noticed beer bottles in the Porter car.

Plaintiff announced in her opening statement that her evidence would extend beyond the proper issues in the case, and it subsequently did so. In fact, her evidence went to the precise issue of the presence of beer bottles in the Porter automobile. Defendant may, of course, object to the plaintiff going into these unrelated fields, but he is not limited to that remedy. When plaintiff opens them up, defendant may then present evidence in the area opened by plaintiff, or at least plaintiff is not entitled to complain if he does. Therefore, plaintiff cannot complain now on appeal that defendants asked questions on cross-examination on an issue as to which plaintiff presented evidence. For cases generally on this subject, see Bowyer v. Te-Co. Inc., Mo., 310 S.W.2d 892; Vanneman v. W.T. Grant Company, Mo., 351 S.W.2d 729; Jackson County v. Meyer, Mo., 356 S.W.2d 892.

Plaintiff's final contention is that the trial court erred in sustaining defendants' objection to the cross-examination of Osbon "when his testimony in trial was inconsistent with his prior testimony by deposition, and counsel for [plaintiff] inquired which of the two inconsistent statements was correct * * *." The transcript shows that the following occurred:

"Q. Now, the precipitation—the road wasn't slippery out there, was it?

"A. It wasn't exactly slippery. It was wet.

"Q. Was it slippery, that is my question.

"A. Well, when you put on your brakes, yes, sir, it would slide the wheel.

"Q. That testimony is inconsistent with your prior testimony—.

"Mr. Burkart: Just a minute. We object—.

"The Court: That is an improper statement Mr. Greene.

"Q. You recall your deposition being taken, Mr. Osbon, earlier in the presence of your attorney in your attorney's office, where you were asked certain questions?

"A. Yes, I remember.

"Q. Now, at that time do you recall giving this question, having received this question and having given this answer:

"'Q. Was it wet? A. Not that you could tell, not enough to be slippery or anything.' Do you recall that question and answer?

"A. I don't remember, sir. I wont be positive.

"Q. You were sworn to tell the truth at that time?

"A. Yes, sir, I was.

"Q. And you were sworn to tell the truth here today?

"A. Yes, sir.

"Q. Which time you were sworn to tell the truth did you tell the truth?

"Mr. Burkart: Now, just a minute. Your Honor, that's an improper comment.

"The Court: Yes, the objection will be sustained. That was arguing with the witness.

"Q. Which is correct?

"Mr. Burkart: Now, we object to that. That is not a proper statement, either. That is arguing, too, with the witness.

"The Court: The objection is overruled. You may answer the question.

"The Witness: I would say that it wasn't exactly wet, but when you put on your brakes it was damp enough to cause you to come into a jackknife, or somethin', if you slid your wheels.

"Q. I see, so it was slippery?

"A. Well, more or less, yes sir.

"Q. This prior statement is not correct then.

"Mr. Burkart: We object to that, Your Honor.

"The Court: Objection sustained."

The precise contention on this appeal is that the trial court erred in sustaining an objection when plaintiff "inquired which of the two inconsistent statements was correct." From the above it is obvious that the objection to the question "Which is correct" was overruled, and the witness was directed to and did answer. The following objection, which was sustained, and properly so, was to the argumentative statement of counsel for plaintiff that "This prior statement is not correct then."

In ruling on an incident remarkably similar to this one, this court said, in Lonnecker v. Borris, Mo., 245 S.W.2d 53, 56, that "It is not 'proper to so frame the cross-examining questions that they are argumentative, or call for a conclusion, or

assume facts,'" and it was expressly held that the question "Which is right," made in the same circumstances as the question here of "Which is correct," is argumentative. Of course, here, the objection to that question was overruled, and the witness made his answer. Plaintiff cites Wilson v. Maryland Refining Co., Mo.App., 7 S.W.2d 442, and Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 160 S.W.2d 740, 142 A.L.R. 666, which set forth the scope and purpose of this type of cross-examination, and of course we do not disagree with the general statements there made. But, there is a correct way to carry on that cross-examination, and plaintiff cannot complain when she was not permitted to pursue an incorrect method. We find no error in the respect contended.

This is a case in which the plaintiff, apparently for trial strategy purposes, voluntarily elected to extend her evidence beyond the issues of her case based on the humanitarian negligence of Osbon in failing to stop. This invited evidence and comments by defendants on those otherwise immaterial matters, which evidence and comments in other circumstances might have resulted in prejudicial error. But, plaintiff having voluntarily selected the area of combat should not be permitted to complain on appeal that defendants met her on her selected ground. We conclude that the errors of which plaintiff complains, if in fact there was error, was not, under the particular circumstances of this case, prejudicial to plaintiff.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.